USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/17/09

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
UNITED STATES OF AMERICA            :       MEMORANDUM DECISION
                                    :
        - against -                 :       09 Crim. 213 (DC)
                                    :
BERNARD L. MADOFF,                  :
                                    :
            Defendant.              :
                                    :
- - - - - - - - - - - - - - - - - -x

APPEARANCES:       LEV L. DASSIN, Esq.
                   Acting United States Attorney for the
                        Southern District of New York
                   By:  Lisa A. Baroni, Esq.
                        Sharon E. Frase, Esq.
                   One Saint Andrew's Plaza
                   New York, New York  10007

                   INDIRA SATYENDRA, Esq.
                   Attorney for ABC, Inc.
                   77 West 66th Street, 15th Floor
                   New York, New York  10023

                   HILARY LANE, Esq.
                   Attorneys for NBC Universal, Inc.
                   30 Rockefeller Plaza
                   New York, New York  10112

                   CARLOTTA CASSIDY, Esq.
                   Attorney for Fox News Network, LLC
                   1211 Avenue of the Americas
                   New York, New York  10036
```

**CHIN, District Judge**

In this case, defendant Bernard L. Madoff has been charged in an eleven-count information with securities fraud and other crimes. On March 12, 2009, he pled guilty to all eleven counts.

Prior to the guilty plea, numerous victims submitted emails to the United States Attorney's Office, some describing the impact Madoff's crimes had on their lives and others asking

for an opportunity to be heard at the plea proceedings. With the permission of the Court, the Government filed the emails under seal. Certain other documents in the case have also been filed under seal.

ABC, Inc., NBC Universal, Inc., and Fox News Network, LLC (collectively, the "Media") request that the emails be unsealed and that the Court make specific findings with respect to the other sealed documents. The Government argues that the majority of the victims' emails (156 out of a total of 188) should be redacted as to the victims' personal identifying information. With respect to the other documents, the Government argues that they should remain sealed for now, except for one letter that the Government consents to releasing in redacted form.

## BACKGROUND

On March 6, 2009, the Government filed a notice of its intent to proceed in the case by information, thereby indicating that Madoff intended to waive his right to be prosecuted by indictment. See Fed. R. Crim. P. 7(b) ("An offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant -- in open court and after being advised of the nature of the charge and of the defendant's rights -- waives prosecution by indictment."). The same day, I issued an order setting forth, inter alia, the procedures by which victims of Madoff's crimes (1) would be notified about court proceedings, and (2) could express their desire to be heard on

the issues raised in this case.  Specifically, the order authorized the Government to notify victims via the Internet and stated:

> The Internet posting by the Government will specify that the Court, in order to conduct orderly proceedings and to maintain a reasonable schedule, requires notice prior to the plea proceeding scheduled for March 12, 2009, from potential victims who wish to be heard during that proceeding.  Therefore, any potential victim who wishes to heard shall send a notice by 10:00 a.m. on March 11, 2009, to the United States Attorney's Office . . . .  The Court will rule on whether, and the manner in which, victims may be heard at the proceeding.

The Government collected the emails and provided them to the Court and defense counsel on March 9 and 11, 2009.  Per the Government's request, I ordered that the emails be filed under seal.

By letter to the Court dated March 10, 2009, NBC requested that the documents in this case be unsealed.  On March 17, 2009, I issued an order directing the Government to confer with the defense and NBC in an effort to agree on what may be unsealed.  To the extent that the parties could not agree on items to be unsealed, the Government was to address the Court in writing and NBC was to respond.  The parties have done so.  The defense takes no position on the unsealing of documents.  ABC and Fox News have since joined in NBC's request.

Eleven items (or sets of items, including three sets of emails) have been sealed in this case thus far.  The Government has not yet publicly described the other items filed under seal,

except for the Government's March 6, 2009 letter to Judge McKenna, which the Government agrees should be made public in redacted form. The Government has submitted, in camera, a letter dated March 31, 2009 describing the sealed documents. The letter will be filed now, under seal.[1] The emails, the March 6, 2009 letter, and the other sealed documents are discussed in turn.

## DISCUSSION

### A. Applicable Law

#### 1. The Right of Access

Under common law, the public has a "general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Comms, Inc., 435 U.S. 589, 597 (1978). Similarly, pursuant to the First Amendment, the public has a "qualified . . . right to attend judicial proceedings and to access certain judicial documents." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004); see also Press-Enterprise Co. v. Superior Court of Cal., 478 U.S. 1, 9 (1986); In re New York Times Co., 828 F.2d 110, 114 (2d Cir. 1987). "Transparency is pivotal to public perception of the judiciary's legitimacy and independence." United States v. Aref, 533 F.3d 73, 83 (2d Cir. 2008).

---

[1] The Government's March 31, 2009 letter describes in detail the substance of the redacted sections of the March 6, 2009 letter and the other sealed items. Because I conclude that these items shall remain sealed, the March 31, 2009 letter must also be filed under seal.

### a.   Common Law Presumption of Access

In determining whether a document submitted to the Court will be made public pursuant to the common law right of access, a court must: (1) determine that it is a judicial document; (2) determine the weight of the presumption of access attached to the specific judicial document; and (3) balance countervailing interests against the presumption of access. See Lugosch v. Pyramid Co., 435 F.3d 110, 119-20 (2d Cir. 2006).

An item is deemed a judicial document if it is "relevant to the performance of the judicial function and useful in the judicial process." United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"). The weight of the presumption of access attached to a judicial document is determined "by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II"). The Second Circuit has explained that the weight of presumption will fall "somewhere on a continuum." Id. For example, the weight of the presumption of access to evidence adduced at trial and documents used by the parties in moving for and opposing summary judgment is great. See, e.g., Lugosch, 435 F.3d at 123; In re Application of National Broadcasting Co., Inc., 635 F.2d 945, 952 (2d Cir. 1980). In contrast, "documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery," are granted little, if any,

weight. Amodeo II, 71 F.3d at 1050. Additionally, the public's "ultimate interest in the case should not affect the weight of the presumption." Lugosch, 435 F.3d at 123.

The countervailing factors to be balanced against the right of access are specific to the facts of each case. In this case, the Court must consider the privacy interests of the victims and the danger of impairing law enforcement. The Second Circuit has held that "[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." Amodeo II, 71 F.3d at 1050 (internal quotations and citations omitted). The Court has also understood that "[u]nlimited access, while perhaps aiding the professional and public monitoring of courts, might adversely affect law enforcement interests or judicial performance." Id.

### b. The First Amendment

In addition to the common law right of access, the public and the press have a "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004); see also In re New York Times Co., 828 F.2d 110, 114 (2d Cir. 1987). Courts have followed two different approaches to determine whether the First Amendment right to access attaches to a document. The first is the "experience and logic" approach, which questions "whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the

functioning of the particular process in question." Lugosch, 435 F.3d at 120 (internal quotations omitted). Courts following this approach "have generally invoked the common law right of access to judicial documents in support of finding a history of openness." Hartford Courant Co., 380 F.3d at 92. The second approach "view[s] the media's and public's qualified right of access to judicial documents as derived from or a necessary corollary of the capacity to attend the relevant proceedings." Id. at 93.

Even if the First Amendment applies, the documents are not automatically made public. "Proceedings may be closed and . . . documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." In re New York Times, 828 F.2d at 116 (internal quotations omitted). Moreover, when appropriate, the Court's findings may be entered under seal. Id.

### 2. Victims' Privacy Rights

The Justice for All Act of 2004 (the "Act") confers specific rights on crime victims, including the "right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). The Court is to ensure that crime victims are afforded the rights provided under the Act, including the right to reasonable notice of certain court proceedings and the right to be heard. 18 U.S.C. § 3771(a)(2), (a)(4), (b)(1). The Act provides that the victims and the

Government may affirmatively assert the victims' rights by moving for relief in the district court, and, if necessary, in the court of appeals.  18 U.S.C. § 3771(d).

**B.    Application**

    **1.    The Emails**

On March 28, 2009, the Government emailed the victims who had sent emails in response to the Court's March 6, 2009 order.  The Government inquired as to whether the victims consented to the full disclosure of their correspondence.  As of March 31, 2009, the Government divided the emails into three categories:  (1) 32 emails from victims who consent to having their emails made public; (2) 41 emails from victims who object to the public disclosure of their correspondence; and (3) 115 emails from victims who have not indicated whether they consent or object to disclosure of their correspondence.  The first set of emails has not been redacted.  The victims' names, addresses, telephone numbers, and email addresses have been redacted from the second and third categories of emails.  The Government has provided all the emails -- the first set unredacted and the second and third sets redacted -- to the Media.

The Media argues that the entirety of the email correspondences should be made public.  In other words, the Media requests that the Court unseal the personal identifying information of all the victims who emailed the Government.  The Government argues that the personal information should remain redacted based on the privacy rights of the victims.  For the

following reasons, the identifying information of the 41 victims who object to the disclosure of their correspondence shall remain under seal. The 115 emails from victims who have not indicated whether they object to disclosure shall be unsealed in their entirety.

    a.    **Common Law**

The victims' emails are judicial documents. They were solicited by this Court's March 6, 2009 order and were relevant to the performance of this Court's judicial function because they were used to determine the logistics of the March 12, 2009 plea proceedings. Accordingly, the presumption of access applies to the emails.

The weight of the presumption of access to the emails falls in the middle of the continuum. The emails were not intended to be, and indeed were not, to any significant extent, "part of the process of adjudication." United States v. Sattar, 471 F. Supp. 2d 380, 386 (S.D.N.Y. 2006). Instead, they provided the Court with notice of those who sought to be heard. They were not, in themselves, the tools by which victims were heard by the Court. In contrast, in preparation for the sentencing of Madoff -- scheduled for June 29, 2009 -- the Court advised victims in its May 14, 2009 order (later superseded by its May 20, 2009 order) that victims may submit letters as the tool by which they are heard by the Court. Because the letters are intended to be the means by which victims are heard, the Court also advised victims that the letters would be made part of the public record.

The emails at issue in this opinion are different from the letters submitted regarding sentencing as the former were not intended to be the means by which victims were heard by the Court. Moreover, prior to the plea proceedings, victims were not provided advance notice that the emails would become part of the public record in this case.

On the other hand, the emails did not merely express a general desire by victims to be heard at the plea proceeding. If they had, I would conclude that the presumption of access to the emails is entitled to little or no weight. Many of the emails, however, addressed substantive aspects of the case and some referenced Madoff's bail status, which was at issue on March 12, 2009. Accordingly, I conclude that the presumption of access to the emails is granted moderate weight.

The presumption of access must be balanced against the victims' privacy rights. As expressed in the Act, victims have the "right to be treated with fairness and with respect for the[ir] dignity and privacy." 18 U.S.C. § 3771(a)(8). It is this Court's duty, under the Act, to ensure that the victims are afforded their rights. 18 U.S.C. § 3771(b)(1). The Government has redacted the identifying information of victims who opposed unsealing, as well as those who have not indicated whether they oppose or consent to unsealing. These two groups of victims are addressed in turn.

The Government has provided the Court with statements from victims who object to their information becoming public.

Examples include: (1) "This has already cost me and my family dearly and the pain is immeasurable.  Having the press contact us will only serve to reopen wounds that will take years to heal."; (2) "I do NOT consent for the safety of my family.  More public information is a security issue."; and (3) "I do NOT consent and do NOT want my correspondence or personal information released.  That would be a huge invasion of privacy.  I have already been through a lot due to the Madoff fraud and the release of this would certainly cause additional duress."  Based on the sentiments expressed by the victims who oppose unsealing and the Court's duty to treat the victims fairly and with respect for their dignity and privacy, I conclude that the countervailing privacy interests of the victims who oppose the unsealing of their emails is significant.  I further note that the analysis is mostly academic.  The substance of the emails has been made public.  Because only the personal information has been redacted and the victims' privacy interests are significant, the presumption of access to the emails is outweighed.  Accordingly, the identifying information shall remain under seal for those victims who oppose disclosure of their correspondence.

With respect to the victims who have neither consented to nor opposed the disclosure of their correspondence, I conclude that the balance tips in the opposite direction.  The Government has the authority under the Act to assert victims' rights and it has done so in this case.  Nevertheless, the victims were given an adequate opportunity to object to the disclosure of their correspondence and have not done so.  In addition, as the Media

points out, the victims -- as well as any member of the concerned public -- were aware that this is an extremely high profile case with intense media coverage.  Indeed, some victims intended their correspondence to serve as a tool to be heard on the substantive issues of the case.  Some even expressed gratitude for the opportunity to address the Court via email.  Given the victims' opportunity to object, the very public nature of the case, and the sentiments expressed in many of the emails, I conclude that the presumption of access outweighs the privacy interests of the victims who did not object to the unsealing of their correspondence.  Accordingly, the identifying information of victims who did not affirmatively object to the unsealing of their correspondence shall be made public.[2]

        **b.**    **The First Amendment**

For the reasons above, I conclude that the First Amendment right of access attaches to these emails.  I further conclude that the First Amendment is satisfied.

As ordered above, the emails from victims who did not object to the unsealing of their correspondence will now be unsealed in their entirety.  The emails with redactions are minimal.  Only 41 out of 188 emails will be redacted.  Furthermore, the redactions are "narrowly tailored" to preserve

---

[2] Because the Government's March 28, 2009 email to victims only gave victims approximately four days to respond, the Government shall redact the identifying information of all victims who emailed an objection to the disclosure of his or her correspondence up to the date of this opinion.

the privacy interests of the victims.  The 41 emails have been provided to the Media; only the victims' identifying information has been redacted.  Accordingly, the First Amendment is satisfied.

### 2.   **The March 6, 2009 Letter and Other Sealed Items**

The Government argues that the other sealed documents should remain under seal, except its March 6, 2009 letter to Judge McKenna, which it concedes should be unsealed in part.  I have reviewed, in camera, the Government's submissions regarding these sealed documents.

As a general matter, the sealed information pertains to the ongoing efforts of law enforcement both in the United States and abroad to investigate the Madoff fraud and recover assets for victims.  More specifically, the sealed items -- including the redacted segments of the March 6, 2009 letter -- pertains to three subjects of information:  (1) the Government's efforts to retrieve evidence from foreign countries; (2) the Government's efforts to secure forfeiture of assets belonging to Madoff; and (3) voluntary restraint agreements ("VRAs") between certain individuals, including Ruth Madoff, and the United States Attorney's Office.

The information relating to these three subjects shall remain under seal for the following reasons.  First, disclosing the details of the Government's efforts to obtain evidence will undoubtedly hamper the investigation, as the individuals and entities under investigation would be put on notice.  Second,

making public the Government's efforts to secure forfeiture of assets could negatively impact those efforts. Third, disclosing the substance of the VRAs could undermine the Government's ability to maximize recovery of assets for victims. Accordingly, the countervailing interests of law enforcement outweigh the common law and First Amendment right of access to the sealed documents. Moreover, the victims (and the public at large) are best served by maintaining the sensitive and confidential information under seal.

## CONCLUSION

For the reasons stated above, the continued sealing of the information in this case -- incorporating the revisions ordered by this opinion -- is consistent with both the common law and First Amendment right of access to judicial documents. The Government shall provide the Court with the victims' emails -- in both redacted and unredacted form as ordered by this opinion -- and the Court will make them part of the public docket of this case. The March 6, 2009 letter, in redacted form, shall be made part of the public record as well. The Government has indicated that it may consent to the unsealing of some of the other sealed documents. The Government is hereby ordered to notify the Court of the status of the sealed documents by July 1, 2009.

SO ORDERED.

Dated:   New York, New York
         June 17, 2009

                                        _____
                                        DENNY CHIN
                                        United States District Judge