# DICKSTEIN SHAPIRO LLP

1177 Avenue of the Americas  |  New York, NY 10036-2714
TEL (212) 277-6500  |  FAX (212) 277-6501  |  dicksteinshapiro.com

June 28, 2009

**BY HAND AND ELECTRONIC MAIL**

The Honorable Denny Chin
United States District Judge
United State Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:    <u>**United States v. Madoff, 09-cr-213 (DC)**</u>

Dear Judge Chin:

On behalf of our client Bernard L. Madoff, we respectfully submit this letter in response to the Pre-Sentence Report ("PSR") and the Government's Sentencing Memorandum ("GSM") filed with the court on June 22, 2009 and June 26, 2009, respectively.

We again do not dispute the severity of the crimes to which Mr. Madoff pled guilty.  Nor do we in anyway seek to minimize the suffering of those who lost money.  We do, however, wish to point out certain facts and issues which we respectfully submit the Court should review in evaluating Mr. Madoff's conduct and the appropriate sentence in this case.

First, the actual loss, as described in detail in the PSR, does not appear to rise to the historic proportions that the government has maintained.  Indeed, the $13 billion loss is the foundation for the government's justification for a sentence of 150 years or life.  *See* GSM at 1, 12, 13, 16. However, if the SIPC Trustee is correct, and we have no basis at this time to dispute his calculations, the loss number is significantly less than previously stated.  PSR at ¶¶ 90, 90 fn. 7, 198 and 199.  The $13,266,363,286 dollars of losses would be reduced in the following manner: $1,276,169,445 held by the Trustee; $1,255,000,000 already recovered by the Trustee; demand letters sent from the Trustee for $735,000,000 in "claw backs"; and $10,100,000,000 in "claw back" lawsuits.   (In total the stated recoverable amount identified in the PSR is approximately $13,336,169,445, not including the billions in claw backs from various feeder funds.)  Thus, if the Trustee is successful in his lawsuits, losses will be substantially reduced.  <u>Id.</u>

While we in no way seek to minimize the magnitude of the crimes to which Mr. Madoff pled guilty, we respectfully submit that the media hysteria that the ponzi scheme was approximately $65 billion and that Mr. Madoff lined his pockets with billions is simply not correct.

We are mindful of Sentencing Guidelines § 2B1.1 and the Commentary to 2B1.1 Application Notes 3F(iv) which specifically states:

Washington, DC  |  New York, NY  |  Los Angeles, CA

370184.02

**DICKSTEIN**SHAPIRO LLP

Hon. Denny Chin
June 28, 2009
Page 2

> _Ponzi and Other Fraudulent Investment Schemes._  In a case involving a
> fraudulent investment scheme, such as a Ponzi scheme, loss shall not be
> reduced by the money or the value of the property transferred to any
> individual investor in the scheme in excess of that investor's principal
> investment (_i.e._, the gain to an individual investor in the scheme shall not
> be used to offset the loss to another individual investor in the scheme).

Nevertheless, in evaluating the appropriate sentence as the GSM correctly sets forth, we
respectfully submit that the Court should consider the guidance provided by United States v.
Booker, 125 S. Ct. 738 (2005), United States v. Crosby, 397 F.3d 103 (2d Cir. 2005) and
§ 3553(a) in determining an appropriate sentence "sufficient but not greater than necessary."
We respectfully submit that these facts should be weighed in evaluating the losses and the
appropriate sentence.

Second, we note that the PSR makes reference to Mr. Madoff's medical condition.  PSR at
¶¶ 160-169.  This, plus the fact that Mr. Madoff is 71 years old and both his parents passed away
in their sixties reduces the likelihood that Mr. Madoff will live beyond 12 years and certainly not
20 years.  Thus, we respectfully submit that a life sentence as we stated in our initial Sentencing
Memorandum is 12 years.

Finally, contrary to the Government's assertions, Mr. Madoff still believes that to the best of his
recollection the fraud commenced in the 1990s, and the vast majority of investor funds were
returned to certain investors as redemptions and not used by Mr. Madoff personally.    The
Government claims that the fraud at issue began "as early as the 1980s."  GSM at 2.  At the same
time the PSR and the GSM state that:

> Contrary to his promise to those clients that he would use their funds
> pursuant to the strategies he had marketed, Madoff used most of the
> investors' funds to meet the periodic redemption requests of other
> investors.

PSR ¶ 62 (emphasis added). [1]

The PSR, in the next sentence, conflates the infusion of commissions from investors into Mr.
Madoff's firm and claims that Mr. Madoff used the commissions for himself and others in the
amount of millions of dollars.  PSR ¶ 62.  This claim appears as well in ¶ 44.  Additionally the
PSR at ¶ 44 claims that Mr. Madoff "defraud[ed] BLMIS clients of billions of dollars of funds

---

[1]      Indeed, the Information to which Mr. Madoff pled guilty to has the same allegation at ¶ 9.

**DICKSTEIN**SHAPIRO LLP

Hon. Denny Chin
June 28, 2009
Page 3

by false pretenses, failing to invest investors' funds as promised, and misappropriating and converting investors funds to Mr. Madoff's own use." This claim is also inconsistent with the government's position that Mr. Madoff used "most" of the funds received to pay redemptions to earlier investors.

We do not disagree with the claim in the PSR at ¶ 82 that Mr. Madoff made loans to family and associates, presumably with investors' funds – after 2000. Nor do we contest the claims at PSR ¶ 187 that from 2002 and through the time of his arrest, Mr. Madoff caused more than $250 million of BLMIS investment advisory clients to be comingled with the BLMIS proprietary trading business. PSR ¶ 68. But we note that the loan activity described above occurred between 2000 and 2008.[2] Before that time, as we stated earlier and which is quoted in the Information at paragraph 9, most of the funds were used for redemptions – the classic Ponzi scheme. Indeed, the wrongful acts stated in the PSR at paragraphs 72 and 75 occurred in 2007 and 2008. Additionally, the PSR at ¶ 30 states correctly that Mr. Madoff's firm Bernard L. Madoff Investment Securities ("BLMIS") was a sole proprietorship until December 2000 when it was reorganized as a single member limited liability corporation. Thus, all the assets and revenues were Mr. Madoff's alone, and as stated in PSR ¶¶ 83, 84, 85 and 86, Mr. Madoff had the right to dispense funds from BLMIS. The appropriate analysis is whether (1) BLMIS used investors' funds to make these payments, and (2) BLMIS had sufficient assets of its own to make legitimate and lawful expenditures.

We respectfully contend that while investor funds were comingled with BLMIS proprietary funds after 2000, the vast amount of revenue generated by BLMIS was legitimate. As the PSR at ¶ 181 notes, at the time of Mr. Madoff's arrest, BLMIS exclusive of the fraudulent advisory business employed nearly 200 people (approximately 100 were traders) and 20 to 25 people in the London office. Further, as early as 1989, as noted in the PSR at ¶ 182, BLMIS, exclusive of fraudulent conduct accounted for approximately 2% on any given day of all trades on the New York Stock Exchange ("NYSE"). As of September 1991, as noted in the PSR at ¶ 188, BLMIS accounted for approximately 10% of all trades on the NYSE.

The point of the above discussion, we respectfully submit, is that BLMIS was a self-sufficient enterprise engaged in market making activities that executed real trades that generated revenues from which Mr. Madoff was able to withdraw legitimate funds. The PSR, as does the government, repeatedly draws attention to Mr. Madoff's misconduct from approximately 2000 to 2008. We do not disagree. But the ponzi scheme which to be sure was fraudulent and illegal was for the most part, money in from investors – money out for redemptions or interest payments.

---

[2]     Paragraph 11 of the Information refers to this same time period.

**DICKSTEIN**SHAPIRO LLP

Hon. Denny Chin
June 28, 2009
Page 4


For the reasons stated above, we respectfully request that the Court impose a sentence of less than life.

Respectfully submitted,

Ira Lee Sorkin
(212) 277-6733
sorkini@dicksteinshapiro.com


cc: Marc Litt, Esq. (via email)

370184.02