Daniel R. Levy, Esq.
EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, New Jersey 07102
(973) 642-1900
dlevy@ebglaw.com
Attorneys for Petitioner
Epstein, Becker & Green, P.C.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>BERNARD L. MADOFF,<br><br>Defendant. | No. 09 Cr. 213 (DC)<br><br>**THIRD-PARTY PETITION OF EPSTEIN BECKER & GREEN, P.C. FOR HEARING ON FORFEITURE PROCEEDINGS PURSUANT TO 28 U.S.C. § 853** |

Comes now the law firm of Epstein, Becker & Green, P.C. (the "Firm" or "Petitioner"), by their attorneys, James P. Flynn, Esq. and Daniel R. Levy, Esq. pursuant to 21 U.S.C. § 853(n) and Rule 32.2(c) of the Federal Rules of Criminal Procedure, and petitions this Court to set aside the Court's Second Order of Forfeiture in this case dated September 22, 2010, which included forfeiture of funds totaling $24,713.57, plus interest ($24,790.86), which were the sole exclusive property of the Firm.

In support of the petition, the Firm states as follows:

## I.   GENERAL INFORMATION

1.      This matter involves the conviction, by way of guilty plea, of Bernard L. Madoff, and subsequent forfeiture of certain properties owned by Mr. Madoff and his wife, Ruth Madoff, as a

partial satisfaction of a personal money judgment.  A Preliminary Order of Forfeiture was filed on June 26, 2009 and a Second Order of Forfeiture was filed thereafter on September 22, 2010.

2.      On June 29, 2009, Ruth Madoff executed a separate Stipulation and Order and agreed, and the Court ordered, that she would be bound by the terms of the Preliminary Order of Forfeiture as if they applied equally to her, including by expressly agreeing "to forfeit to the United States of America, any and all property and other interests belonging to, owed to or controlled in whole or in part by RUTH MADOFF, and all property traceable to such property."

3.      On June 29, 2007, the Firm filed, on behalf of plaintiffs Robert S. Gettinger and Ruth Madoff, a Complaint entitled *Robert S. Gettinger, Esq. and Ruth Madoff v. Magnetic Services, Inc. and Dr. Mark Berger*, Civil Action No. 07-cv-3015 (SDW)(MCA) (the "New Jersey Action") in the United States District Court for the District of New Jersey (the "New Jersey Court"), alleging that defendants breached a Partnership Agreement entered into between plaintiffs and defendants (Exhibit A).

4.      On July 22, 2009, plaintiff Robert S. Gettinger, Esq., died and the Firm subsequently substituted the Estate of Robert S. Gettinger, Esq., as a plaintiff in the New Jersey Action.

5.      The parties settled the New Jersey Action, and on or about May 14, 2009, New Jersey Court entered an order dismissing the New Jersey Action and noting that the "matter has been settled." (Exhibit B).

6.      On January 4, 2010, as a result of the ongoing proceedings in this Court, the New Jersey Court entered an Order requiring defendants to deposit with the New Jersey Court through a certified or cashier's check "those funds that would otherwise have been payable to plaintiff Ruth Madoff." (Exhibit C).

7.     The January 4, 2010 Order required the Cashier of the New Jersey Court to place the funds deposited by defendants into an interest-bearing account. (Id.)

8.     On or about January 4, 2010, defendants deposited with the New Jersey Court two checks, in the amounts of $7,500 and $54,493, representing funds that would have otherwise have been payable to Ruth Madoff (hereinafter referred to as "Settlement Funds"). (Exhibit D).

9.     On March 11, 2010, the New Jersey Court dismissed the claims in the New Jersey Action but specifically stated that "the Court's Order of January 4, 2010 remains in full force and effect." (Exhibit E).

10.     On August 3, 2010, the New Jersey Court executed a Stipulation and Order ("Stipulation") between the Firm and the United States Attorney's Office for the Southern District of New York (the "Government"), wherein the Firm and Government agreed that the Settlement Funds be transferred to the United States District Court for the Southern District of New York ("New York Court") (Exhibit F).

11.     The parties stipulated, and the New Jersey Court ordered, that the Settlement Funds be transferred to the Cashier of the New York Court, and that the Settlement Funds be held in an interest-bearing account pending further order of the New York Court. (Id.)

12.     Under the terms of the Stipulation, the Government agreed that the Firm claimed "an entitlement to some or all of the Funds in connection with its work in the [New Jersey Action[.]" (Id.)

13.     The Government stipulated that it did "not intend to opposed the disbursement of reasonable fees and expenses properly due and owing to the Firm for its work in the [New Jersey Action], consistent with any engagement materials, retainer, or fee arrangements, and the forfeiture laws[.]" (Id.)

14.     By Order dated October 19, 2010, the New York Court directed the Cashier to accept the transfer of "approximately $61,993, plus interest, from the Cashier's Office of the Clerk of the Court, United States District Court for the District of New Jersey, and to deposit the same in an interest-bearing account pending further Order of the Court."  (Exhibit G)

15.     On or about October 26, 2010 the Settlement Funds were transferred from the New Jersey Court to the New York Court.

16.     The Firm has an interest in $24,713.57 of the approximate $61,993, plus interest, that was transferred to the New York Court.  The $24,713.57 is in connection with legal fees performed by the Firm from approximately June of 2007 (preparing and filing the Complaint) through approximately May of 2009 (settlement of the case).

17.     Petitioner, the Firm, claims an interest in a portion of the forfeited Settlement Funds, which interest arose as a result of the Firm's entitlement to attorney's fees, pursuant to an agreement between the Firm and its clients to be paid reasonable attorneys' fees in connection with its work in the New Jersey action.  The value of the Firm's interest in the Settlement Funds is $24,713.57, plus interest ($24,790.86).

18.     On or about February 14, 2011, the Firm received correspondence from the Government instructing the Firm to file a petition with the Clerk of the New York Court within thirty-five (35) days of the date of the letter in order to assert a legal interest in the Settlement Funds. (Exhibit H (without enclosures)).

## II.    **LEGAL POSITION OF PETITIONER**

19.    Petitioner, Epstein, Becker & Green, P.C. opposes the forfeiture of $24,713.57, plus interest ($24,790.86), constituting that portion of the Settlement Funds which represents the attorney's fees owed to the Firm in connection with the New Jersey Action for the following reasons:

**A.    <u>The Settlement Funds Are Not Subject To Criminal Forfeiture.</u>**

a.    The Settlement Funds seized contain proceeds that are not proceeds for the crimes under which Bernard Madoff has pleaded guilty, as required under 28 <u>U.S.C.</u> § 853(a), and in fact, Bernard Madoff was <u>not</u> a party to the New Jersey Action wherein the Settlement Funds were obtained.

b.    The Settlement Funds seized contain proceeds that are not proceeds for any alleged crimes of Ruth Madoff, as required under 28 <u>U.S.C.</u> § 853(a), who has neither been convicted of, nor pled guilty to any crimes in the New York Court.

c.    In order for the Settlement Funds to be subject to criminal forfeiture, a factual nexus must exist between the forfeited property (<u>i.e.</u>, the Settlement Funds) and the individual criminal conduct.  <u>See, e.g.</u>, <u>Libretti v. United States</u>, 516 U.S. 29, 43 (1995) (requiring factual nexus between criminal conduct and forfeited property); <u>United States v. White</u>, 116 F.3d 948, 952 (1st Cir. 1997) (requiring that the subject property be used to facilitate the commission of the offense in order to qualify as property subject to forfeiture under § 853(a)).

d.    The Settlement Funds are not subject to forfeiture because the Settlement Funds were funds relating to a Partnership Agreement entered into by Ruth Madoff that has no factual nexus to the commission of the ponzi scheme that Bernard Madoff pled guilty to in the New York Action.  <u>See</u> 28 <u>U.S.C.</u> § 853(a); <u>Libretti</u>, 516 U.S. at 43; <u>White</u>, 116 F.3d at 952.

**B.     Even If Subject To Forfeiture, Petitioner Has A Legal Interest In The Settlement Funds Under 28 U.S.C. § 853(n)(6)(A).**

e.      The Firm has a legal interest in that portion of the forfeited Settlement Funds, pursuant to a fee agreement between the Firm and its clients to be paid reasonable attorneys' fees in connection with its work in the New Jersey action.  (Exhibit I).

f.      The Firm's legal fees in prosecuting the New Jersey Action total $65,368.50, and approximately $40,654.93 of which has been paid.  (Exhibit J).  To date, all of the attorneys' fees paid to the Firm were paid by Robert S. Gettinger or his estate.

g.      The value of attorney's fees due to the firm, which represents the Firm's legal interest in the forfeited Settlement Funds, is $24,713.57, plus interest ($24,790.86).

h.      Petitioner, Epstein, Becker & Green, P.C., has a superior legal right, title or interest to the funds in the aforementioned accounts, pursuant to 28 U.S.C. § 853(n)(6)(A), as the Settlement Funds at issue were subject to Petitioner's legitimately earned legal fees pursuant to its fee arrangement with its clients.  (Exhibit I).

**C.     Petitioner Has A Legal Interest In The Settlement Funds Because Attorneys Who Provide Legal Services To Individuals Who Have Forfeited Assets Are Permitted To Recover Against The Forfeiture For Legal Fees.**

i.      Petitioner, Epstein, Becker & Green, P.C., is an innocent owner of the Settlement Funds pursuant to 28 U.S.C. § 853(n)(6)(B) and was without cause to believe that Ruth Madoff's property was subject to forfeiture.

j.      Petitioner, Epstein, Becker & Green, P.C., qualifies as a "bona fide purchaser for value" under 28 U.S.C. § 853(n)(6)(B) because it is a trade creditor that entered into a bona fide, arms length transaction with Ruth Madoff.  See United States v. Reckmeyer, 836 F.2d 200, 208

(4th Cir. 1987); <u>United States v. Mageean</u>, 649 F.Supp. 820, 828-29 (D. Nev. 1986), <u>aff'd</u> <u>without opinion</u>, 822 F.2d 62 (9th Cir. 1987).

  k.  Moreover, Petitioner, Epstein, Becker & Green, P.C., qualifies as a "bona fide purchaser for value" under 28 <u>U.S.C.</u> § 853(n)(6)(B) because it is well settled that attorneys who provide legal services to individuals who have forfeited assets are permitted to recover against the forfeiture for legal fees.  <u>See</u>, <u>e.g.</u>, <u>United States v. Badalamenti</u>, 614 F.Supp. 194, 197-98 (S.D.N.Y. 1985) (holding attorneys fees exempt from forfeiture under § 853); <u>see</u> <u>also</u> <u>United States v. Bassett</u>, 632 F.Supp. 1308, 1315-18 (D. Md. 1986) (attorneys' fees exempt from forfeiture provisions of § 853), <u>aff'd sub nom.</u>, <u>United States v. Harvey</u>, 814 F.2d 905 (4th Cir. 1987); <u>United States v. Reckmeyer</u>, 631 F.Supp. 1191, 1194 n.1 (E.D. Va. 1986) (allowing attorneys to assert claims for fees under § 853(n)(6)), <u>aff'd sub nom.</u>, <u>United States v. Harvey</u>, 814 F.2d 905 (4th Cir. 1987); <u>United States v. Rogers</u>, 602 F.Supp. 1332, 1346-48 (D. Colo. 1985) (stating that attorneys' fees are excluded from forfeiture).  <u>Cf.</u> <u>United States v. Douglas</u>, 55 F.3d 584 (11th Cir. 1995).

**WHEREFORE,** Epstein, Becker & Green, P.C. respectfully prays the Court to set a Hearing and to allow and permit the petitioner to set forth testimony and evidence that the petitioner is the rightful owner of a portion of the Settlement Funds totaling $24,713.57, plus interest, for an amount totaling $24,790.86.

Dated: March 14, 2011                                  EPSTEIN BECKER & GREEN, P.C.


                                                       Daniel R. Levy
                                                       One Gateway Center
                                                       Newark, New Jersey 07102
                                                       (973) 642-1900
                                                       JFlynn@ebglaw.com

                                                       Attorneys for Petitioner
                                                         Epstein, Becker & Green, P.C.


## **VERIFICATION**

Under penalty of perjury, I acknowledge these allegations to be true to the best of my knowledge.


                                                       Daniel R. Levy

                                                       Dated:  March 14, 2011

# EXHIBIT A

EPSTEIN BECKER & GREEN, P.C.
Two Gateway Center
12th Floor
Newark, New Jersey 07102
(973) 642-1900
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT S. GETTINGER, ESQ. and RUTH MADOFF,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>MAGNETIC SERVICES, INC., and DR. MARK BERGER,<br><br>　　　　　　　Defendants. | Civil Action No.: _____ (___)<br><br>Civil Action<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs, Robert S. Gettinger, Esq., and Ruth Madoff ("Plaintiffs"), by way of Complaint against the Defendants, allege as follows:

## NATURE OF THE ACTION

1.　　In 1993, Robert S. Gettinger, Esq., and Ruth Madoff ("Plaintiffs" or "Limited Partners") entered into a Limited Partnership Agreement ("Partnership Agreement") with Magnetic Services, Inc. ("Magnetic Services"), a New Jersey Corporation.　Pursuant to the Partnership Agreement, a copy of which is attached as Exhibit A, hereto, Magnetic Services was the General Partner.　Upon information and belief, Defendant Dr. Mark Berger was the President of Magnetic Services.

2.　　The Partnership was to terminate on June 30, 2005, although the Partnership Agreement specifies that the Partnership shall not terminate until its assets have been distributed and that,

"[p]ending distribution," the rights and properties shall continue to be exploited on the Partnership's behalf. (Ex. A, §9.02(b)).

3.      After June 30, 2005, Plaintiffs were informed that a portion of the Partnership's assets were sold and the proceeds deposited into the Partnership's bank account.  The Limited Partners requested a schedule of the Partnership's assets that were sold, to whom, and the respective prices obtained, but Magnetic Services has not provided such a schedule to the Limited Partners.

4.      Defendants have failed to liquidate the Partnership assets and make distributions to the Limited Partners.   These assets include Partnership funds deriving from collections, sale of assets, including, but not limited to, good will, which covers the continuation of the ongoing business at 2 Hudson Place in Hoboken, New Jersey, the business trade name, patient files, advertising material and notoriety, the lease, furniture, fixtures, medical equipment and supplies, and such other assets of the Partnership that may have existed and continue to exist.

## THE PARTIES

5.      Robert S. Gettinger, Esq., is an individual residing in the State of New York, and is a citizen thereof.

6.      Ruth Madoff is an individual residing in the State of New York, and is a citizen thereof.

7.      Dr. Mark Berger is an individual residing in the State of New Jersey, is a citizen thereof, and is the President of Defendant Magnetic Services, Inc.

8.      Magnetic Services, Inc. ("Magnetic Services") is a New Jersey corporation, maintaining a principal place of business at 2 Hudson Place, First Floor, Hoboken, New Jersey 07030.

2

## JURISDICTION AND VENUE

9.      This is a claim for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, unjust enrichment, constructive trust, and for an accounting.   Alternatively, Plaintiffs seek removal of Magnetic Services as the General Partner.

10.      The above-captioned action is a civil action over which this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332, in that:

    (a)      Plaintiff, Robert S. Gettinger, Esq., is domiciled in and a citizen of the State of New York, with an address of 50 Sheldraig Road, Scarsdale, New York.

    (b)      Plaintiff, Ruth Madoff, is domiciled in and a citizen of the State of New York, with an address of 133 East 64th Street, New York, New York 10022.

    (c)      Defendant Magnetic Services, Inc., is a New Jersey corporation maintaining a principal place of business in Hoboken, New Jersey.   Magnetic Services, therefore, is domiciled in and a citizen of the State of New Jersey.

    (d)      Defendant Dr. Mark Berger is domiciled in and a citizen of the State of New Jersey, with an address of 23 Lisa Drive, Chatham, New Jersey 07928.

    (e)      The above-captioned action is a civil action in which the amount in controversy exceeds the sum or value of $75,000, exclusive of costs and interest, and is between citizens of different states.

11.      Venue is proper in this district pursuant to 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

### The Partnership Agreement

12.    On or about April 27, 1993, Plaintiffs entered into a Limited Partnership ("Partnership Agreement") with Defendant Magnetic Services.

13.    Plaintiffs are Limited Partners and Defendant Magnetic Services is the General Partner.

14.    The name of the Partnership is "New Jersey MR Imaging, L.P."

15.    The purpose of the Partnership is to:

    (a)    Acquire a lease hold interest in 2 Hudson Place, Hoboken, New Jersey 07030;

    (b)    Acquire a Magnetic Resonance Imaging ("MRI") machine;

    (c)    Operate a center where physicians could perform Magnetic Imaging and allied services; and

    (d)    To have and exercise all the powers and to engage in any lawful business related or incidental thereto.

16.    The Partnership Agreement specifies that the Partnership would continue in existence until June 30, 2005. (Ex. A, §2.06).

17.    The Partnership Agreement specifies that the Partnership shall be dissolved upon the occurrence of the expiration of the term of June 30, 2005. (Ex. A., §9.01(a)(6)).

18.    The Partnership Agreement indicates that dissolution shall be effective on the date giving rise to the dissolution, but that the Partnership shall not terminate until the assets have been distributed. (Ex. A., §9.01(b)) (emphasis added).  That section reads:

4

> Dissolution shall be effective on the date of the event giving rise to the dissolution, but the Partnership shall not terminate until its assets have been distributed in accordance with the provisions of this Article.

19.     As General Partner, Defendant Magnetic Services was required, upon dissolution, to be the Liquidating Trustee and proceed diligently to wind up the affairs of the Partnership and distribute its assets. (Ex. A, §9.02(a)).  That section states:

> On dissolution of the Partnership, the General Partner shall be the Liquidating Trustee, unless the dissolution occurs as a result of a Terminating Event with respect to a sole General Partner, in which event the Liquidating Trustee shall be selected by Limited Partners holding at least a majority of the Limited Partner's Percentage Interests.

20.     As Liquidating Trustee, Defendant Magnetic Services was required to make a full and proper accounting of the assets, liabilities, and operation of the Partnership. (Ex. A., §9.03). Section 9.03 of the Partnership Agreement states:

> Upon dissolution of the Partnership, the Liquidating Trustee shall cause the partnership's accountant to make full and proper accounting of the assets, liabilities, and operation of the Partnership, as of and through the last day of the month in which the dissolution occurs.

21.     Pending distribution, Defendant Magnetic Services, as Liquidating Trustee, was required to continue to exploit the rights and properties of the Partnership consistent with their liquidation. (Ex. A., §9.02(b)).

22.     Pursuant to the Partnership Agreement, the General Partner shall be liable, responsible, and accountable in damages or otherwise to the Partners for any acts performed by the General Partner arising of or resulting from the fraud, bad faith, or gross negligence of the General Partner to comply in any material respect with any representation, warranty, covenant, condition,

or other Agreement of the General Partner contained in the Partnership Agreement ("Excluded Acts"). (Ex. A, §4.07).

23.     The Limited Partners have the power to remove or expel the General Partner if the General Partner commits an Excluded Act, as defined in the Partnership Agreement, and the Limited Partners may choose a successor. (Ex. A, §5.04(a)).

24.     The Partnership Agreement is governed by the laws of the State of New Jersey. (Ex. A, §11.03).

### Defendants' Breach Of The Partnership Agreement And Of Other Duties

25.     Upon information and belief, a portion of the Partnership's assets were sold in or about July 2005 for $165,000 and the proceeds deposited in the Partnership's bank.

26.     The Limited Partners requested a schedule of the Partnership's assets that were sold in or about July 2005, but Magnetic Services has failed to provide such a schedule to the Limited Partners.

27.     Funds relative to the good will of the Partnership have not been distributed to the Limited Partners.

28.     The Partnership's good will includes the continuation of the ongoing business at 2 Hudson Place in Hoboken, New Jersey, the business trade name, patient files, advertising material and notoriety, the lease, furniture, fixtures, medical equipment and supplies, and such other assets of the Partnership that may have existed and continue to exist.

29.     Upon information and belief, Magnetic Services has failed to make distributions to the Limited Partners, including an amount attributable to the sale of the assets and lease.

30.     Upon information and belief, the General Partner has refused to make a proper accounting of the Partnership's assets, liabilities and operation of the partnership, as required by §9.03 of the Partnership Agreement.

31.     Upon information and belief, pursuant to §9.01(b) of the Partnership Agreement, the Partnership has not terminated because the assets of the Partnership have not been distributed in accordance with the Partnership Agreement.

32.     Upon information and belief, the Partnership continues to be in existence because the assets of the Partnership have not been distributed, and therefore, Plaintiffs are entitled to the share of profits until all of the assets have been distributed.

33.     Upon information and belief, during the period of liquidation, the business at 2 Hudson Place, Hoboken, New Jersey, continued and retained a profit of approximately $800,000.

## COUNT ONE

### (Breach of Contract – Magnetic Services and Dr. Berger)

34.     Plaintiffs re-alleges and incorporate by reference the allegations contained in paragraphs 1 through 33 of the Complaint.

35.     Defendant Magnetic Services (and/or its alter ego, Dr. Berger) has breached the Partnership Agreement because it has failed to diligently wind-up the affairs of the Partnership as specified in §9.02(a) of the Partnership Agreement.

36.     Defendant Magnetic Services (and/or its alter ego, Dr. Berger) has breached the Partnership Agreement because it has failed to distribute all of the Partnership's assets as specified in §9.02(a) of the Partnership Agreement.

37.     Defendant Magnetic Services (and/or its alter ego, Dr. Berger) has breached the Partnership Agreement because it has failed to make a full and proper accounting of the assets, liabilities, and operation of the Partnership, as required by §9.03 of the Partnership Agreement.

38.     Pursuant to §9.01(b) of the Partnership Agreement, the Partnership has not terminated because the assets of the Partnership have not been distributed, and therefore, Plaintiffs are entitled to their share of the profits of the Partnership from June 30, 2005 to present.

39.     Plaintiffs have been, and continue to be damaged by Defendant Magnetic Services' breach of contract.

     **WHEREFORE**, Plaintiffs demand the entry of judgment in its favor and against Magnetic Services and Dr. Berger on the First Count as follows:

     (a)     Declaring Magnetic Services and Dr. Berger to be in breach of their obligations under the Partnership Agreement;

     (b)     Awarding damages, interest and costs of suit;

     (c)     Awarding attorney's fees and costs of suit; and

     (d)     Awarding such other and further relief as this Court deems just and equitable.

## COUNT TWO

**(Breach of Implied Covenant of Good Faith and Fair Dealing – Magnetic Services and Dr. Berger)**

40.     Plaintiffs repeat and re-allege the allegations set forth in the previous paragraphs as if set forth in full herein.

41.     The Partnership Agreement between Plaintiffs and Defendants contains an implied covenant of good faith and fair dealing.

42.     This implied covenant of good faith and fair dealing imposed a duty on Magnetic Services and Dr. Berger to act with honesty in fact and good faith in the performance of its obligations under the agreement.

43.     Defendants Magnetic Services and Dr. Berger have engaged in conduct in a manner inconsistent with the terms of the Partnership Agreement.

44.     Specifically, Plaintiffs had a reasonable expectation that Defendants would wind-up all Partnership business in a reasonable time after June 30, 2005 and that Defendants would distribute all Partnership assets in a reasonable time thereafter.

45.     By failing to perform their obligations under the Partnership Agreement, Magnetic Sources and Dr. Berger breached the covenant duty of good faith and fair dealing inherent in the Partnership Agreement.

        **WHEREFORE**, Plaintiffs demand the entry of judgment in its favor and against Magnetic Services and Dr. Berger on the Second Count as follows:

        (a)  Declaring Magnetic Services and Dr. Berger to be in breach of their obligation of good faith and fair dealing inherent in the Partnership Agreement;

        (b)  Awarding damages, interest and costs of suit;

        (c)  Awarding attorney's fees and costs of suit; and

        (d)  Awarding such other and further relief as this Court deems just and equitable.

## COUNT THREE

### (Breach of Fiduciary Duty – Magnetic Services and Dr. Berger)

46.     Plaintiffs repeat and re-allege the allegations set forth in the previous paragraphs as if set forth in full herein.

47.     As General Partner, Magnetic Services (and/or its alter ego, Dr. Berger) owes a fiduciary duty to the Limited Partners, and, as a result, Magnetic Services (and/or its alter ego, Dr. Berger) owes the Limited Partners the highest degree of loyalty.

48.     As Liquidating Trustee, Magnetic Services (and/or its alter ego, Dr. Berger) owes a fiduciary duty to the Limited Partners, and as a result, Magnetic Services (and/or its alter ego, Dr. Berger) owes the Limited Partners the highest degree of loyalty.

49.     The failure of Magnetic Services (and/or its alter ego, Dr. Berger) to distribute all assets of the Partnership to the Limited Partners constitutes a breach of Magnetic Services' owed to the Limited Partners.

50.     Magnetic Services' (and/or its alter ego, Dr. Berger) actions, as Liquidating Trustee, in failing to wind-up the affairs of the Partnership and distribute the assets, constitutes a breach of fiduciary duties owed to the Limited Partners.

51.     Plaintiffs have been damaged as a result of these breaches of fiduciary duties.

**WHEREFORE**, Plaintiffs demand the entry of judgment in its favor and against Magnetic Services and Dr. Berger on the Third Count as follows:

(a)  Declaring Magnetic Services and Dr. Berger to be in breach of its fiduciary duties owed to the Limited Partners;

(b)  Awarding damages, interest and costs of suit;

(c)  Awarding attorney's fees and costs of suit; and

(d)  Awarding such other and further relief as this Court deems just and equitable.

## COUNT FOUR

### (Conversion – Magnetic Services and Dr. Berger)

52.    Plaintiffs repeat and re-allege the allegations set forth in the previous paragraphs as if set forth in full herein.

53.    Defendants have intentionally and unlawfully exercised, and continue to exercise, dominion over assets that should have been distributed to the Limited Partners within a reasonable time after June 30, 2005.

54.    Defendants' conduct constitutes a conversion of Plaintiffs' property contrary to New Jersey law.

55.    Defendants' acts of conversion were committed willfully, knowingly, maliciously, and in conscious disregard of their legal obligations to Plaintiffs.

56.    Defendants' conduct has caused and continues to cause injury to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for:

(a)    Immediate liquidation and/or distribution of all Partnership assets as of June 30, 2005, for good will;

(b)    Immediate distribution of all Partnership assets acquired or increased after June 30, 2005 until the present;

(c)    Compensatory, consequential and incidental damages;

(d)    Punitive damages;

(e)    Reasonable attorney's fees and costs of suit;

(f)    Pre-judgment and post-judgment interest on that award; and

(g)    Such other and further relief as this Court deems equitable and just.

## COUNT FIVE

### (Unjust Enrichment – Magnetic Services and Dr. Berger)

57.     Plaintiffs repeat and re-allege the allegations set forth in the previous paragraphs as if set forth in full herein.

58.     Defendants have retained the benefit of receiving all of the proceeds and good will as a result of the Partnership entered into with the Limited Partners but have refused, and continue to refuse, to reimburse Plaintiffs for their share of the Partnership assets.

59.     Without compensation to Plaintiffs, Defendants have exploited, and continue to exploit, such assets in support of an ongoing business at the location of the Partnership's business.

60.     Consequently, Magnetic Services and Dr. Berger have been unjustifiably enriched and have caused Plaintiffs to suffer monetary damages.

     **WHEREFORE**, Plaintiffs are entitled to compensatory damages in an amount to be determined by the Court, together with costs and interest, as allowable by law.

## COUNT SIX

### (Accounting – Magnetic Services)

61.     Plaintiffs repeat and re-allege the allegations set forth in the previous paragraphs as if set forth in full herein.

62.     Magnetic Services is required to keep correct and complete books and records of account.

63.     Plaintiffs are entitled to a prompt accounting of the assets, liabilities, and operation of the Partnership, as specified in §9.03 of the Partnership Agreement.

## COUNT SEVEN

### (Constructive Trust – Magnetic Services and Dr. Berger)

64.     Plaintiffs repeat and re-allege the allegations set forth in the previous paragraphs as if set forth in full herein.

65.     Magnetic Services has wrongfully withheld monies and other assets due to the Limited Partners and has been unjustly enriched by its failure to make the contractually required distribution of assets, and therefore, a constructive trust should be imposed on all of the monies and assets Magnetic Services or any of its affiliates and subsidiaries, including but not limited Dr. Berger, has or will obtain from the continued failure to distribute all of the Partnership's assets.

## COUNT EIGHT

### (Removal of General Partner – Magnetic Services)

66.     Plaintiffs repeat and re-allege the allegations set forth in the previous paragraphs as if set forth in full herein.

67.     Magnetic Services committed an Excluded Act, as defined in §4.07 of the Partnership Agreement, by acting in bad faith and failing to comply with the conditions of the Agreement.

68.     Due to the Excluded Acts of Magnetic Services, the Limited Partners are entitled to expel the General Partner under §5.04(a) of the Partnership Agreement.

**WHEREFORE**, Plaintiffs are entitled to the expulsion of Magnetic Services as the General Partner and appointment of a successor General Partner to cause an accounting of the Partnership and to properly dissolve the Partnership and distribute all assets accordingly.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.


Dated: Newark, New Jersey
   June 29, 2007

          EPSTEIN BECKER & GREEN, P.C.
          Attorneys for Plaintiffs,
          Robert S. Gettinger, Esq., and
          Ruth Madoff

          By: _____
           JAMES P. FLYNN
           A Member of the Firm

## CERTIFICATE UNDER L. CIV. R. 11.2

This matter in controversy is not the subject of another action pending in any court, or any other pending arbitration or administrative hearing.

_____
James P. Flynn

June 29, 2007

**EPSTEIN BECKER & GREEN, P.C.**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
(973) 642-1900
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT S. GETTINGER, ESQ. and RUTH MADOFF, | CIVIL ACTION NO. |
| Plaintiffs, | **CERTIFICATION OF COUNSEL PURSUANT TO LOCAL CIVIL RULE 201.1(d)(3)** |
| v. | |
| MAGNETIC SERVICES, INC., and DR. MARK BERGER, | |
| Defendants. | |

I, James P. Flynn, being of full age, hereby certify as follows:

1.    I am an attorney licensed to practice law in the State of New Jersey and am a member of the firm of Epstein Becker & Green, P.C., attorneys for plaintiffs Robert S. Gettinger, Esq., and Ruth Madoff in the above captioned matter.

2.    I submit this certification pursuant to Local Civil Rule 201.1(d)(3) so that this matter is not referred to compulsory arbitration.  As set forth in the Complaint, damages in this action exceed the sum of $150,000.00, exclusive of interest and costs and punitive damages.

I certify under penalty of perjury that the foregoing statements are true and correct.

Dated:  June 29, 2007

EPSTEIN BECKER & GREEN, P.C.

By: _____
James P. Flynn

Two Gateway Center, 12th Floor
Newark, New Jersey  07102
(973) 642-1900
Attorneys for Plaintiffs

NE:287091v1                                    2