# EXHIBIT A

xxx

### LIMITED PARTNERSHIP AGREEMENT

Agreement of Limited Partnership made among **Magnetic Services, Inc.** a New Jersey Corporation, located **c/o Mark Berger 23 Lisa Drive, Chatham, New Jersey 07928** (the General Partner) and each of the individuals whose names appear as Limited Partners on the attached Exhibit A, which is expressly made a part of this Agreement.  Exhibit A also separately lists the names of the General Partners. The persons listed as Limited Partners on Exhibit A are referred to in this Agreement as the Limited Partners.  The Limited Partners and the General Partners are collectively referred to as the Partners.

### ARTICLE I. DEFINITIONS

As used in this Agreement, the following terms shall have the meanings set forth below, unless the context clearly requires otherwise:

"Law" means the Uniform Limited Partnership Law (1976) as in effect in the State of New Jersey, as amended from time to time.

"Affiliate" means, with respect to any Partner, any person who directly or indirectly controls or is controlled by or is under direct or indirect common control with the Partner.  For purposes of this definition, the term "control" (including the correlative meanings of the terms "controlling," "controlled by" and "under common control with"), as used with respect to any person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of that person, whether through ownership or voting securities or interest

\ira\5801LPR.get     03/13/95

or by contract or otherwise.  The term "person" shall mean any individual, partnership (general or limited), corporation or other business entity.

"Agreement" means this Agreement of Limited Partnership as it may from time to time be amended, modified, supplemented, or restated in accordance with the provisions of this Agreement.

"Bankruptcy" means, with respect to any Partner, that the Partner shall have applied for or consented to the appointment of a custodian, receiver, trustee or liquidator, or other court-appointed fiduciary with respect to all or a substantial part of his or her property; or that a custodian, receiver, trustee or liquidator, or other court-appointed fiduciary shall have been appointed without the consent of the Partner; or that the Partner has made a general assignment for the benefit of creditors, has been adjudicated insolvent, has filed a voluntary petition in bankruptcy, is seeking reorganization or an arrangement with creditors or otherwise is seeking to take advantage of any insolvency law; or that the Partner has filed an answer admitting the material allegations of a petition in bankruptcy, reorganization, or any insolvency proceedings; or, if a petition in bankruptcy shall have been filed against the Partner, that the petition has not been dismissed for a period of thirty days; or that an Order for Relief with respect to the Partner shall have been entered under the federal Bankruptcy Code or other similar legislation.

"Capital Transactions" means (a) the sale or other disposition

of any assets of the Partnership, the proceeds of which are attributable to the capital of the Partnership; (b) the dissolution and liquidation of the Partnership; or (c) the occurrence of any other event with respect to the Partnership that must be reported as capital transactions for federal income tax purposes.

"Certificate" means the certificate of limited partnership filed in the office of the Secretary of State of New Jersey, as it has been and may be from time to time amended, modified, or supplemented in accordance with the provisions of this Agreement.

"General Partner" means **Magnetic Services, Inc.** any person who may succeed him or her as general partner of the Partnership pursuant to this Agreement, and any person who may be admitted as an additional General Partner of the Partnership pursuant to this Agreement.

"Limited Partner" means any person whose name appears on Exhibit A and any person who is admitted to the Partnership as a limited partner pursuant to the provisions of this Agreement.

"Limited Partner's Contribution" means the capital contribution of each Limited Partner contributed pursuant to the provisions of this Agreement.

"Limited Partner's Notes" means as to each Unit, the negotiable recourse promissory notes, representing the Limited Partner's Contribution payable as follows: (a) $ **30,000** on signing the Subscription Agreement; (b) $ **20,000** within two (2) weeks after a overcall by the General Partner(s).

The principal amount of the Limited Partner's Notes for each

Limited Partner is set forth opposite his or her name on Exhibit A.

"Limited Partner's Percentage Interest" means the proportion that each Limited Partner's Contribution bears to the Contributions of all Partners, including the General Partner (s).  Each Limited Partner's Percentage Interest is set forth opposite the name of the Limited Partner on Exhibit A.

"Net Cash Flow" means for any full or partial fiscal year all cash receipts of the Partnership excluding (a) Contributions of the Partners; (b) funds received by the Partnership in respect of indebtedness incurred by the Partnership; (c) interest or other income earned on temporary investment of funds pending other application of those funds; and (d) proceeds from the sale of assets and partial or complete liquidation of the Partnership less the sum of all cash expenses of the Partnership during the period and all working capital or reserves or other amounts that the General Partner reasonably determines to be necessary or appropriate for the proper operation of the Partnership's business.

"Partners" means the General Partner and any additional or successor general partner, and the Limited Partners and any substitute Limited Partner as well as any additional limited partners admitted to the Partnership pursuant to the provisions of this Agreement.

"Partnership" means the limited partnership formed by this Agreement, as it may from time to time be constituted.

"State" means the State of New Jersey.

"Terminating Event" means, as to any General Partner, the

withdrawal or retirement of the General Partner in contravention of the provisions of Section 8.01, the Bankruptcy of the General Partner, the removal of the General Partner pursuant to Section 5.04, or any other event that results in the General Partner ceasing to be a General Partner.

"Unit" means a unit of Limited Partnership interest represented by a capital contribution of **$50,000**, which shall be evidenced by Class A Limited Partner's Notes.

## ARTICLE II. ORGANIZATION

### Name

2.01 The name of the Partnership shall be **New Jersey MR Imaging, L.P.** However, the business of the Partnership may be conducted, upon compliance with all applicable laws, under any other name determined to be appropriate or advisable by the General Partner.

### Organization of the Partnership

2.02 The Partnership shall be deemed organized on the date of the filing of the Certificate. The General Partner shall cause to be executed and filed and shall all further documents and instrument with all appropriate authorities that may be necessary or appropriate from time to time to comply with all requirements for the formation and operation of a limited partnership in the State. The General Partner shall cause the Partnership to comply with all requirements for the qualification of the Partnership as a limited partnership in any other jurisdiction before the Partnership shall conduct any business in that jurisdiction.

## Purposes of the Partnership

2.03 The purposes of the Partnership are:

a.   To acquire a lease hold interest in **2 Hudson Place, Hoboken, New Jersey 07030;**

b.   To acquire a **Magnetic Resonance Imaging machine ("MRI"),** operate a center where physicians can perform Magnetic Imaging and allied services; and

c.   To have and exercise all the powers and to engage in any lawful business related or incidental thereto.

## Principal Place of Business and Address

2.04 The principal place of business of the Partnership shall be **2 Hudson Place, Hoboken,** New Jersey or any other address or addresses that the General Partner may designate by notice to the Limited Partners.  The Partnership may maintain any other offices at any other places that the General Partner deems advisable.

## Registered Agent and Office

2.05 The registered office of the Partnership shall be located at **2 Hudson Place, Hoboken,** New Jersey. The registered agent of the Partnership shall be **Ira A. Ginsburg, Esq.**

**Wacks, Mullen & Kartzman**
**101 Gibraltar Drive-1C**
**Morris Plains, New Jersey 07950**
**(201) 267-3300;(201) 267-2402** fax

## Term

2.06 The term of the Partnership commenced on April 27, 1993, the date of the filing of the Certificate, and the Partnership shall continue in existence until **June 30, 2005,** unless sooner

\ira\5801LPR.get      03/13/95                                        6

dissolved pursuant to the provisions of this Agreement.

ARTICLE III.   **ADMISSION OF PARTNERS**

**CAPITAL CONTRIBUTIONS**

**Agreement to Contribute**

3.01 Each Partner shall contribute to the capital of the Partnership at the time and in the manner provided in this Article.

**Contribution of the General Partner**

3.02 Upon the formation of the Partnership, the General Partner shall contribute $50,000 in cash to the Partnership.

3.03 Upon the execution and delivery of this Agreement, each Limited Partner shall make a Contribution in Limited Partner's Notes in the amounts set forth opposite the name of the Limited Partner on Exhibit A.

b.) The Limited Partner(s) acknowledge that additional amounts may be necessary to fully fund the Partnership.  The Limited Partners will be given two weeks to meet any additional call for funds greater than the initial amount.  If these calls are not met by the Limited Partners, then the General Partner and/or new investors can purchase interests with a proportional reduction of the original Limited Partners' percentages.  In the event of default, the original Limited Partners will not receive any distributions until distributions are made in amounts sufficient to reimburse the General Partner(s) and other Limited Partners the amount of their capital contributions.

## Default by a Limited Partner[1]

3.04 If a Limited Partner shall fail to pay, when due, any one or more of his or her Limited Partner's Notes, that Limited Partner (the Defaulting Limited Partner) shall be in default under this Agreement. While the default continues, the Partnership may elect, in the sole and absolute discretion of the General Partner and without prejudice to any other rights the Partnership may have at law in equity, any of the following or any combination of the following, which each Limited Partner agrees shall be necessary to compensate the Partnership adequately for any and all loss, cost, damage, injury, or expense suffered as a result of the default;

a.   To sue the Defaulting Limited Partner to collect the unpaid principal amount of his or her Limited Partner's Notes *Contribution,* together with accrued but unpaid interest, which from the date of default, shall be calculated at the highest lawful rate, and the amount of all other loss, cost, damage, injury, or expense incurred as a result of the default, including without limitation all costs of collection and all related attorneys' fees and disbursements.

b.   To refuse to make any distributions to the Defaulting Limited Partner to which he or she would otherwise be entitled to pursuant to this Agreement and to apply the amount of those distributions to the reduction of the payments due under the

---

[1].   Provisions a.), b.) c.) and f.) of this section shall apply ONLY to any subsequent Limited Partners, who may subscribe after an additional call of money is made and not met by the original Limited Partner(s).  The rest of these provisions shall apply to all Limited Partner(s) no matter when they subscribed for their share.

Limited Partner's Notes.

c.   To secure another person or persons to purchase the Defaulting Limited Partner's interest in the Partnership (the Defaulted Interest) from the Partnership at a Purchase Price as defined in Section 3.04(e). Upon the payment of the Purchase Price and the agreement of the purchaser or purchasers to assume the remaining liabilities, if any, of the Defaulting Limited Partner under this Agreement, and upon compliance with the provisions of Section 8.03, the purchaser or purchasers shall be admitted as a Limited Partner or Limited Partners in the Partnership and shall be substituted in the place of the Defaulting Limited Partner, with all right, title, and interest in and to the Defaulted Interest.

d.   To offer the other Limited Partners (the Other Limited Partners) the option to purchase the Defaulted Interest from the Partnership.  To make the offer, the General Partner shall send written notice (the Offer Notice) to the Other Limited Partners, offering to sell to the Other Limited Partners (the Offer) the Defaulted interest for the Purchase Price.  The option shall be exercised by the Other Limited Partners by sending written notice (the Response Notice) to the General Partner within **twenty (20)** days from the giving of the Offer Notice (the Offer Period).  The failure of any Other Limited Partner to deliver a Response Notice within the Offer Period shall constitute rejection of the Offer by that Other Limited Partner.  If the Other Limited Partners shall have accepted the Offer to purchase more than all of the Defaulted Interest, each Other Limited Partner who accepted the Offer shall

be entitled to purchase that portion of the Defaulted Interest by a fraction, the numerator of which is the Other Limited Partner's interest in the Partnership and the denominator of which is the sum of the interests in the Partnership of all of the Other Limited Partners who have accepted the Offer.   If the Other Limited Partners purchase less than all of the Defaulted Interest, the General Partner, in his or her sole and absolute discretion, may purchase all or part of the remaining Defaulted Interest on the same terms and conditions of the Offer.

e.   The purchase price for any Defaulted Interest (the Purchase Price) shall be equal to the difference between (i) the sum of original principal amount of the Defaulting Limited Partner's Limited Partner's Notes and (ii) the outstanding principal amount of the Defaulting Limited Partner's Limited Partner's Notes.   That portion of the Purchase Price representing principal amounts and accrued interest due but unpaid prior to the closing of the acquisition of the Defaulted Interest shall be payable in cash or by certified or bank check payable to the order of the Partnership and the balance of the Purchase Price shall be evidenced by delivery of a note in the remaining principal amount.

f.   The closing of any acquisition of a Defaulted Interest by the Other Limited Partners or the General Partner shall take place at the offices of the Partnership ten (10) days after the termination of the Offer Period.   If the General Partner acquires any portion of the Defaulted Interest he or she shall be admitted as a Limited Partner of the Partnership upon compliance with the

provisions of Section 8.03.  Upon any acquisition of a Defaulted Interest by the Other Limited Partners or the General Partner, those Partners shall be substituted in the place of the Defaulting Limited Partner with all right to and title in the Defaulted Interest.

g.  Notwithstanding the following provisions of this Section 3.04, to the extent permitted by the Internal Revenue Code of 1986, as amended (the Internal Revenue Code), a Defaulting Limited Partner shall not be entitled to any allocations with respect to the Defaulted Interest for the year in which the default occurs or for any succeeding year, or be entitled to or receive any distributions other wise provided for in this Agreement, from the date of the default until the default is cured.  If a Defaulted Interest is acquired by one or more Other Limited Partners, or the General Partner or by any other person, the allocations and distributions provided for in this Agreement with respect to the defaulted Interest shall pass to the purchaser or purchasers for the calendar year in which the purchase occurs and for succeeding calendar years, to the extent permitted by the Internal Revenue Code.  If the Internal Revenue Code prevents the purchaser or purchasers from participating in allocations and distributions occurring before the date of the acquisition, then the purchaser or purchasers shall participate in allocations and distributions from the date on which the Defaulted Interest is acquired and any allocations and distributions on and with respect to the Defaulted Interest occurring from the date of default to the date of the

acquisition shall be allocated or distributed pro rata among the Partners, in the proportion that each Partner's capital contribution bears to the sum of the capital contributions of all of the Partners (other than the Defaulting Limited Partner), and, if not permitted by the Internal Revenue Code, than to the Defaulting Limited Partner.

h.    For purposes of any provision of this Agreement that provides for or requires the consent or action of the Class A Limited Partners, the Defaulting Limited Partner shall not be entitled to vote on or consent with respect to the action and the Defaulted Interest shall not be deemed to be outstanding in determining whether the required consent of the Limited Partners has been obtained.

## Returns of Distributions

3.05 a.    No Partner shall be required to contribute any capital or lend any funds to the Partnership for any reason whatsoever, except as provided in Sections 3.02 or 3.03.

b.    Notwithstanding anything to the contrary in this Agreement, and in accordance with the Uniform Limited Partnership Law, if a Limited Partner has rightfully received the return, by cash distribution or otherwise, of the whole or any part of his or her capital contribution to the Partnership, the Limited Partner shall remain liable to the Partnership for any sums (not in excess of the capital so returned, with interest) necessary to discharge the Partnership's liabilities to all creditors who extended creditor whose claims arose before the return.

### No Priority

3.06 Except as otherwise provided in this Agreement, no Limited Partner shall be entitled to any distributions from the Partnership or to withdraw or demand the return of any part of his or her capital contribution. No Limited Partner shall have the right to demand or receive property other than cash in return for his or her capital contribution or as a distribution of income. No Limited Partner shall have priority over any other Limited Partner either as to the return of his or her capital contribution to the Partnership or as to any distributions.

### Treatment of Advances, Interest and Withdrawals

3.07 a. If any Partner shall advance any funds to the Partnership other than as provided in this Article III, the amount of the advance shall not be an additional capital contribution of the Partner, but shall be a debt due from the Partnership to the Partner to be repaid at the times and with the interest expressly agreed on or, in the absence of an agreement, on the dissolution and liquidation of the Partnership and without interest.

b. No interest shall be paid on any capital contributions. Except as otherwise provided in this Agreement, no Partner shall be entitled to withdraw any part of his or her capital contributions until the dissolution and liquidation of the Partnership.

ARTICLE IV. **RIGHTS, POWERS, AND OBLIGATIONS OF THE GENERAL PARTNER**

### Management of Partnership Business

4.01 The General Partner shall be solely responsible for the management of the Partnership's business, with all advisable or

consistent rights and powers that are necessary or are generally consistent by law. Except as set forth in this Agreement, any person entering into any agreement or contract with the Partnership or otherwise dealing with the Partnership may conclusively rely upon the act or acts of the General Partner as being the act or acts of the Partnership and binding upon and enforceable against the Partnership.

## Authority of the General Partner

4.02 In addition to any other rights and powers that the General Partner may possess under law or other sections of this Agreement, the General Partner shall have, subject to the provisions of Section 4.04 of this Agreement, all specific rights and powers required for or appropriate to the management of the Partnership's business which, by way of illustration but not by way of limitation, shall include the following rights and powers to the extent they are in furtherance of the business of the Partnership;

a.   To spend the capital and income of the Partnership in the exercise of any rights or powers possessed by the General Partner under this Agreement;

b.   To enter into, execute, amend, supplement, acknowledge, and deliver any and all contracts, agreements, licenses, or other instruments necessary, proper or desirable to carry out the purposes of the Partnership;

c.   To engage others to perform such legal and accounting services as the General Partner deems advisable to carry out the purposes of the Agreement;

14

\ira\5801LPR.get      03/13/95

d.    To the extent that the funds of the Partnership are, in the General Partner's judgment, not required for the conduct of the Partnership's business, to invest temporarily the excess funds in U.S. Government Securities;

e.    To do and perform all other things that are in furtherance of the Partnership's purposes and necessary or appropriate to the conduct of its business.

### Transactions with Affiliates

4.03 The General Partner shall have the authority to enter into any transaction with, or to hire, employ or contract with, any individual, partnership, or corporation, or entity that is an Affiliate of the General Partner if the terms or conditions of any agreement, contract, or understanding entered into between the Partnership and an Affiliate of the General Partner are commercially reasonable at the time of the agreement, contract, or understanding is entered into.

### Restrictions on Authority of the General Partner

4.04 The Authority of the General Partner to act on behalf of the Partnership is restricted as follows:

a.    Subject to the provisions of Section 4.09, the General Partner shall not take any action with respect to any of the following (Restricted Action) without, in each instance, receiving the prior written consent of Limited Partners holding a majority of the Limited Partners' Percentage Interests:

(1)  Dissolve the Partnership;

(2)    Pay any salary, bonus, commission, or other

\ira\5801LPR.get       03/13/95                                          15

compensation to the General Partner, except as otherwise specifically provided for in this Agreement; or

(3)   Lend any Partnership funds or property to any person. The General Partner may bind the Partnership on a loan of funds from outside sources, without the consent of any of the limited partner(s) as long as the amount of any loan is FIFTY THOUSAND ($50,000) DOLLARS or less.

b.   If, pursuant to the provisions of this Section or any other provisions of this Agreement, the General Partner is required to obtain the consent of a sufficient number of Limited Partners who hold at least 50% of the Limited Partners Shares before taking any action, other than Restricted Actions, the General Partner shall first give five (5) days' written notice of the nature and details of the proposed action to all of the Limited Partners, and the proposed action shall not be undertaken unless, before the expiration of the five day period, a written consent to the action is received from Limited Partners holding at least 50% of Limited Partner's Percentage Interests.

## Compensation of the General Partner

4.05 The General Partner shall be entitled to receive the following:

1.   Reimbursement for all start up monies, including but no limited to attorneys fees; filing fees; accounting fees; copying, duplicating and postage fees. A detailed list of these fees will be on file at the Partnership's office and available upon written request.

Depending on the amount of money necessary to initially fund the Partnership, the General Partner(s) will be entitled to receive the following in addition to any monies paid as a capital contribution:

I.   If the Limited Partners contribute no more then $300,000, Fifty (50%) percent;

II.  If the Limited Partners contribute $300,001 to $375,000, Forty-Five (45%) percent;

III. If the Limited Partners contribute $375,001 to $500,000, Forty (40%) of any total distribution to any and all the partners, pursuant to this agreement.

The General Partner shall serve as general partner without the payment of any compensation other than as provided in this paragraph. The General Partner shall be entitled to be reimbursed by the Partnership for all out-of-pocket expenses incurred by him or her in connection with the formation and organization of the Partnership and the performance of his or her duties under this Agreement. However, the General Partner(s) will defer any profit distributions until the original Limited Partners have received back their original capital contributions, whatever they may be. At that point, the General Partner(s) will be allowed to recoup any and all deferred monies before the Limited Partner(s) take any of their profits, if any.

## Other Activities Permitted

4.06  The General Partner shall devote to the Partnership's business all time necessary for the proper performance of his or

her duties as general partner. The General Partner and any Affiliates of the General Partner may engage in any other business, investment, or profession, including the investment in, ownership of, or operation of business activities, whether or not in direct or indirect competition with the Partnership. The Partnership and the other Partners shall have no rights in or to any of these businesses, professions, or investments, or in or to any income or profit derived from them.

### Liability of the General Partner

4.07 The General Partner shall not be liable, responsible, or accountable in damages or otherwise to the Partnership or any of its Partners for any failure to take any action or the taking of any action within the scope of authority conferred on him or her by this Agreement, made in good faith or based upon an opinion of counsel (Permitted Acts). The General Partner shall not be liable to the Limited Partners because any taxing authorities disallow or adjust any deductions or credits in the Partnership's income tax returns or for the return of all or any portion of the capital contributions of the Limited Partners. The General Partner shall be liable, responsible, and accountable in damages or otherwise to the Partnership and the Partners for any acts performed by the General Partner arising out of or resulting from the fraud, bad faith, or gross negligence of the General Partner or the failure of the General Partner to comply in any material respect with any representation, warranty, covenant, condition, or other agreement of the General Partner contained in this Agreement (Excluded Acts).

### Indemnification of the General Partner

4.08 The General Partner shall be entitled to indemnification from the Partnership on account of any claim, liability, action, or damage arising from or relating to any Permitted Act of the General Partner and on account of all related reasonable attorneys' fees. The General Partner shall not be entitled to indemnity from the Partnership on account of any claim, liability, action, or damage arising from or relating to any Excluded Act of the General Partner.  Any indemnity under this Section 4.08 or otherwise shall be paid out of and to the extend of the Partnership assets only.

### Failure to Take Action

4.09 The General Partner shall not be liable to the Limited Partners for his or her failure to take any action on behalf of the Partnership, including, but not limited to, any action that may prevent the foreclosure of all or any portion of the assets of the Partnership due to the Partnership's lack of sufficient funds, provided the General Partner gives the Limited Partners prior notice, that the Limited Partners may, but shall not be obligated to, contribute sufficient funds of they then desire that the action be taken.  Moreover, in the event that after the notice is given, the funds are not contributed to the Partnership by the Limited Partners, the General Partner shall have the power, but shall not be obligated (a) to sell all or any portion of the assets of the Partnership in order to raise the funds or (b) to cause the dissolution of the Partnership or the abandonment of any of the assets of the Partnership.

## Changes in General Partner

4.10.a.    If at any time there is more than one General Partner, the occurrence of a Terminating Event with respect to any General Partner shall cause the dissolution of the Partnership unless all of the remaining General Partners elect to continue the business and affairs of the Partnership in accordance with the provisions of this Agreement.

b.    If there shall be only one General Partner, the occurrence of a Terminating Event with respect to the General Partner shall cause the dissolution of the Partnership, unless within ninety days after the occurrence of the Terminating Event, all of the Limited Partners shall elect to continue the Partnership and designate at least one other person, firm, corporation, or entity to serve as General Partner or General Partners for the purpose of continuing the business of the Partnership and the new General Partner or General Partners (the Successor General Partner) sign an agreement to be bound by and comply with all of the duties and obligations of the General Partner under this Agreement.  Upon the filing of an amendment to the Certificate, the Successor General Partner shall succeed to all of the rights, duties and obligations of the General Partner shall succeed to all of the rights, duties and obligations of the General Partner set forth in this Amendment.

c.    A former General Partner shall remain liable for all liabilities and obligations of the Partnership incurred or arising out of a Partnership during the time he or she was a General

Partner, but shall be free from liability in respect of liabilities and obligations incurred and arising out of operations thereafter.

    d.    A former General Partner and any person who acquires, in any manner whatsoever, except as otherwise expressly provided in this Agreement, the interest or any portion of the interest of a former General Partner in the Partnership, shall not be a general partner but shall be entitled to become a Limited Partner upon his or her written acceptance and adoption of all the terms and provision of this Agreement and upon compliance with all of the terms and provisions of Section 8.03.  That person shall, to the extend of the interest transferred to him or her, acquire no more than the former General Partner's interest in the Partnership and shall be entitled to receive all allocations and distributions with respect to that interest provided for in Article VI, but shall not have any right to participate in the management of the affairs of the Partnership or to vote with the other Limited Partners.  The interest acquired by that person shall be disregarded in determining whether action has been taken by any percentage of interest of the Limited Partners.

ARTICLE V.  **RIGHTS AND OBLIGATIONS OF LIMITED PARTNERS**

## Management of Business

    5.01 No Limited Partner shall take part in the management or control of the business of the Partnership or transact any business for or in the name of the Partnership, nor shall any Limited Partner have the power to sign for or bind the Partnership.  Any exercise by the Limited Partners of their rights under this

Agreement, including without limitation Section 4.04, shall be deemed to be an action affecting the agreement among the Partners and not an action affecting the management or control of the business of the Partnership.

### Outside Activities

5.02 Each Limited Partner and any Affiliates of the Limited Partner may engage in any other business, investment, or profession including the investment in, ownership of, or operation of business activities, whether or not in direct or indirect competition with the Partnership. The Partnership and the other Partners shall have no rights in or to the business, profession, or investment or to the income or profits derived from it.

### Liabilities of Limited Partners

5.03 The Limited Partners shall have no personal liability with respect to liabilities and obligations of the Partnership and shall not be required to make any contributions to the capital of the Partnership other than their capital contributions provided for in Section 3.03.

### Removal of a General Partner

5.04 a.   The Limited Partners shall have the power to remove and expel any General Partner, but only if the General Partner has committed an Excluded Act as defined in Section 4.08. If a General Partner has committed an Excluded Act, the General Partner may be expelled and a successor chosen in accordance with the following procedure:

(1) A vote of Limited Partners holding three-fourths of

Limited Partner's Percentage Interest to expel the General Partner as general partner of the Partnership;

(2) Election of a successor General Partner by a vote of by the Limited Partners holding at least three-fourths of Limited Partner's Percentage Interest;

(3) Agreement by the successor General Partner to continue the business of the Partnership.

b.   A former General Partner who shall have been removed pursuant to the provisions of this Section 5.04 shall be entitled to become a Limited Partner of the Partnership to the extent and in the manner provided in Section 4.10(d) of this Agreement.

c.   Upon expulsion of a General Partner, the successor General Partner shall cause an accounting to be prepared covering the transactions of the Partnership since the end of the previous fiscal year.   The costs of the accounting shall be borne by the Partnership.

d.   The provisions of this Section 5.04 shall not limit or impair the rights of any Partner to assert any remedy available to at law or in equity to enforce the provisions of this Agreement or the performance by any Partner of his or her duties under this Agreement, including, but not limited to, the right, independent of the provisions of this Section 5.04, to seek the removal of a General Partner.

ARTICLE VI.   **PROFITS,, LOSSES AND DISTRIBUTIONS**

Profits and Losses

6.01 For purposes of this Agreement, the terms "profits" and

"losses" shall refer respectively to the profits or losses of the Partnership for federal income tax purposes, as determined by the Partnership's accountants annually, and not cumulatively, for each fiscal year of the Partnership.

## Allocation of Profits

6.02 Except with regard to gains from Capital Transactions, which shall be allocated as provided in Section 6.05, all profits of the Partnership and all items of income or gain, and all credits that enter into the computation of profit, income, or gain shall be allocated among the Partners Depending on the amount of money necessary to initially fund the Partnership, the Limited Partner(s) will be entitled to receive the following, subject to the provisions of paragraph 3.03b.:

I.   If the Limited Partners contribute no more then $300,000, Fifty (50%) percent;

II.   If the Limited Partners contribute $300,001 to $375,000, Fifty-Five (55%) percent;

III.   If the Limited Partners contribute $375,001 to $500,000, Sixty (60%) of any total distribution to any and all the partners, pursuant to this agreement.

## Allocation of Losses

6.03 All losses of the Partnership and all items of deduction that enter into the computation of losses shall be allocated among the Partners depending on the Limited Partner(s) contributions as follows:

I.   If the Limited Partners contribute no more then

$300,000, Fifty (50%) percent;

II.   If the Limited Partners contribute $300,001 to $375,000, Fifty-Five (55%) percent;

III.   If the Limited Partners contribute $375,001 to $500,000, Sixty (60%) percent.

The General Partner(s) will be charged as a loss, the remaining percentage to One Hundred Percent (100%), depending on the contribution of Limited Partners.

### Determination and Distribution of Net Cash Flow

6.04 Within thirty days after the end of each calendar quarter, the General Partner, together with the partnership's accountant, shall determine the amount of Net Cash Flow with respect to that calendar quarter. In determining the amount of Net Cash Flow, the General Partner, in conjunction with and with the consent of the Limited Partner(s), may create and maintain reserves in any case in which they deem it necessary or appropriate. Notwithstanding the aforementioned clause, the General partner may, without the advice and consent of the Limited Partner(s) create a reserve of no more then $2,500 per quarter ($10,000 per year) until such time as the reserve has $30,000.

The Net Cash Flow shall be distributed to the Partners in the same amounts and priority as profits are allocated according to Section 6.02. The Net Cash Flow shall be distributed within thirty days after the determination of Net Cash Flow is made.

### Distribution of Net Proceeds From a Capital Transaction

6.05 a.   The net proceeds from a Capital Transaction shall be

distributed as follows:

(1)   First, net proceeds shall be allocated among the Limited Partners in accordance with their unreturned Contributions to the Partnership and the amount allocated to the Limited Partners in accordance with their respective Limited Partner's Percentage Interests;

(2)   Then, net proceeds shall be allocated among the General Partner(s) in accordance with their unreturned Contributions to the Partnership;

(3) Then, all remaining net proceeds shall be distributed to and shared among the Partners as follows:

I.   If the Limited Partners contribute no more then $300,000, Fifty (50%) percent;

II.   If the Limited Partners contribute $300,001 to $375,000, Fifty-Five (55%) percent;

III.   If the Limited Partners contribute $375,001 to $500,000, Sixty (60%) percent.

The General Partner(s) will be entitled to as profit, the remaining percentage to One Hundred Percent (100%), depending on the contribution of Limited Partners.

b.   The net proceeds of a Capital Transaction of the Partnership shall be determined by the General Partner together with the Partnership's accountants, and distributed within ninety days after its receipt by the Partnership.  In determining the amount of net proceeds to be distributed, the General Partner first may pay any expenses of the Partnership connected with the Capital

Transaction, may pay any debts or liabilities of the Partnership (whether or not connected with the Capital Transaction), may create a reserve to provide for the payment of any expenses, debts, or liabilities of the Partnership, or may create a reserve for any reserve for any other purpose[2].

c.   Any gain recognized by the Partnership upon the occurrence of a Capital Transaction shall be allocated among the Partners (after giving effect to all charges and credits for the then current fiscal year of the Partnership, all prior distributions of Net Cash Flow, the value of distributions in kind and proceeds of Capital Transactions of the Partnership), as follows:

(1)  First, the profit shall be allocated to any Partner or Partners whose Capital Accounts (as that term is defined in Section 7.04) have a debit balance, in the ratio of their respective debit balances, until the balances of each Partner's Capital Account is equal to zero;

(2)  Then, gain shall be allocated to the Partners, in the same manner in which net proceeds are distributed.

ARTICLE VII.   **RECORDS, REPORTS, AND TAXES**

**Fiscal Year**

---

[2]   In no event shall monies be deposited in this reserve be without the advise and consent of the Limited Partner(s). Notwithstanding the aforementioned clause, the General partner may, without the advice and consent of the Limited Partner(s) create a reserve of no more then $2,500 per quarter ($10,000 per year) until such time as the reserve has $30,000.

7.01 The fiscal year of the Partnership for both accounting and Federal income tax purposes shall end on December 31, of each year.   For accounting and Federal income tax purposes, the Partnership shall report its operations and profits and losses in accordance with the accrual method of accounting.

## Books and Records

7.02 At all times during the continuation of the Partnership, the General Partner shall keep or cause to be kept full and faithful books of account in which shall be entered fully and accurately each transaction of the Partnership.  All of the books of account shall at all times be maintained at the registered office of the Partnership and shall be open to inspection by the Limited Partners or their representatives, by appointment, during normal business hours.

## Annual Financial Reports

7.03 The books of the Partnership shall be reviewed annually by the Partnership's accountant.  There shall be distributed to the Partners within ninety days after the end of each fiscal year a statement or statements showing distributions to the Partners and allocations to the Partners' Capital Accounts of Partnership taxable income, gains, losses, deductions, and credits, together with any additional information that the General Partner shall determine necessary or appropriate.  These statements need not be audited and may be changed from time to time to cure errors or omissions and to give effect to any retroactive costs or adjustments.  All costs and expenses incurred in connection with

\ira\5801LPR.get     03/13/95                                    23

these reports and statements shall constitute expenses of the Partnership.

## Partners' Accounts

7.04 There shall be established on the books of the Partnership a Capital Account for each Partner. The term "Capital Account," when used with respect to any Partner, shall mean the sum of the capital contributions actually made by the Partner to the Partnership pursuant to Sections 3.02 or 3.03, and increased by:

a.   The amount of all additional contributions, if any, made by the Partner to the capital, and

b.   The amount of all profits credited to the account of the Partner pursuant to Sections 6.02 and 6.06.

## Tax Returns, Elections

7.05 a.   The General Partner shall cause all income tax and informational returns for the Partnership to be prepared by the Partnership's accountant, and shall cause the tax returns to be timely filed with the appropriate authorities. Copies of tax and informational returns shall be kept at the registered office of the Partnership and shall be available for inspection by the Limited Partners or their representatives during normal business hours.

b.   The Partnership shall make elections for federal income tax purposes, to the extent permitted by applicable law land regulations, as follows:

(1)   In case of a transfer of all or part of any Partner's interest in the Partnership, the Partnership shall elect in a timely manner pursuant to Section 754 of

the Internal Revenue Code of 1986, as amended, and pursuant to corresponding provisions of applicable state and local tax laws, to adjust the basis of the assets of the Partnership pursuant to Section 734 of the Internal Revenue Code;

(2)   The Partnership shall elect to use methods of depreciation or amortization that the General Partner determines to be most favorable to the Partners; and

(3)  All other elections required or permitted to be made by the Partnership shall be made in the manner that the General Partner, in consultation with the Partnership's attorneys or the Partnership's accountant, determines to be most favorable to the Partners.

c.   No Partner shall take any action or refuse to take any action that would cause the Partnership to forfeit the benefits of any tax election previously made or agreed to be made by the Partnership.

### Bank Accounts

7.06 The funds of the Partnership shall be deposited in the name of the Partnership in the bank accounts designated by the General Partner.  Withdrawals from accounts shall be made by those persons the General Partner may designate.

ARTICLE VIII.   <u>WITHDRAWAL AND REPLACEMENT OF PARTNERS AND TRANSFER OF PARTNERSHIP INTERESTS</u>

### General Partner

8.01 a.   A General Partner may not pledge, hypothecate, or

ira\5801LPR.get      03/13/95                                    20

otherwise encumber all or any part of his or her interest in the Partnership or, except as provided in Section 8.01(b), withdraw or retire as General Partner without the prior written consent of the Limited Partners holding at least a majority of the Limited Partner's Percentage Interests.

b.   The General Partner, without obtaining the consent at that time of the Limited Partners, subject only to compliance with the provisions of Section 8.01(d), may admit one or more additional persons, firms, corporations, or entities to serve as co-general partners with the General Partner (Additional General Partners).  In the event of the admission of an Additional General Partner, the rights of the General Partner to the profits and losses of, and distributions from, the Partnership contained in this Agreement shall be allocated between the General Partner and the Additional General Partner as they shall designate.

c.   The General Partner, without obtaining the consent at that time of the Limited Partners and subject only to the provisions of Section 8.01(d), may withdraw as General Partner and designate another person, firm, corporation or entity to serve as general partner of the Partnership in the name, and place of the General Partner (Successor General Partner).

d.   The admission of an additional General Partner or a Successor General Partner shall be subject to the following:

(1)   The additional General Partner or the Successor General Partner shall execute an Agreement in form and substance satisfactory to counsel the Partnership

agreeing to be bound by and comply with all of the terms and provisions of this Agreement.

(2)   An Amendment to the Certificate shall be filed to evidence the admission of the Additional General Partner or the Successor General Partner.

(3)   There shall have been delivered to the Partnership an opinion of its counsel to the effect that the admission will not subject the Partnership to federal income taxation as an association taxable as a corporation (rather than as a partnership).

e.   By his or her execution of this Agreement, each Limited Partner specifically agrees to the provisions of this Section 8.01 and consents to the admission of any Additional General Partner or Successor General Partner in accordance with the provisions of this Section 8.01.

f.   Any person who acquires in any manner whatsoever, except as provided in the Agreement, the interests or any portion of the interests of the General Partner shall not be a general partner but shall be entitled to become a limited partner upon executing an agreement, in form and substance satisfactory to counsel to the Partnership, of the person's acceptance and adoption of all of the terms and provisions of this Agreement.   The person shall, to the extent of the interest transferred to him or her, acquire no more than the General Partner's share, if any, in the capital and profits and shall bear the General Partner's share of losses of Partnership.

### Death, Incompetence, Dissolution, or
### Withdrawal of a Limited Partner

8.02 a.     Upon the death, legal incompetency, or Bankruptcy of an individual Limited Partner (including a substituted Limited Partner), his or her legally authorized personal representative shall have all of the rights of a Limited Partner for the purpose of settling or managing his or her estate, and shall have all power that the decedent, incompetent, bankrupt, or insolvent possessed to make an assignment of his or her interest in the Partnership in accordance with the terms of this Agreement.     No personal representative shall be admitted as a Limited Partner in the Partnership except in compliance with the provisions of Section 8.03.

b.     Upon the Bankruptcy, dissolution, or other cessation to exist as a legal entity of any Limited Partner that is not an individual, authorized representative of the entity shall have all rights of a Limited Partner for the purpose of effecting an orderly winding up and disposition of the business of the entity and all power that the entity possessed to make an assignment of its interest in the Partnership in accordance with the terms of this Agreement.     No representative shall be admitted as a Limited Partner in the Partnership except in compliance with the provisions of Section 8.03.

### Substitution of Limited Partners

8.03 Each of the Limited Partners shall have the right, subject to the provisions of this Section 8.03, to sell or assign

any or all of his or her interest in the Partnership to any individual, firm, or corporation, whether or not a Partner (except a person adjudged insane or incompetent); provided, however, that (a) any assignment shall be by instrument, in form and substance satisfactory to counsel for the Partnership, including an expression by the assignee of his or her intention to be substituted as a Limited Partner and his or her acceptance and adoption of all of the terms and provisions of this Agreement, as amended from time to time, and providing for the payment of all costs incurred by the Partnership in connection with the admission, including but not limited to attorneys' fees, accountants' fees, fees incurred by the Partnership in connection with an election pursuant to Section 754 of the Internal Revenue Code, and the cost of preparing and filing the necessary amendment or amendments to the Certificate of Limited Partnership; (b) the General Partner shall have given his or her written consent to the assignment, which consent may not be withheld unreasonably.  Notwithstanding this subsection, the Limited Partner(s) can transfer the right to receive distributions from any or all of their share(s) to any immediate member of their family[3] without the conset of the General Partner(s); (c) the assignment shall not result in any change of ownership, by reason of sales or exchanges, of fifty (50%) percent or more of the total profits and capital of the Partnership during the twelve month period ending on the date of the assignment; (d)

---

[3].  Which shall be defined as a spouse, child, grandchild or parent, niece or nephew.

the General Partner shall have received a favorable opinion of counsel to Partnership that the sale or assignment shall not constitute a violation of the Securities Act of 1933, as amended, or of any law or statute of any state; and (e) the substitute Limited Partner shall execute a power of attorney substantially identical to that contained in Section 11.09.   Each substitute Limited Partner shall be entitled to the same rights and powers as were possessed by his or her assignor, including the right to sell or assign his or her interest in the Partnership in the same manner and subject to the same condition.

### Transfer Expenses

8.04 All expenses of the Partnership, including legal, accounting, and general audit expenses, occasioned by the sale, assignment, or transfer by a Partner of his or her Partnership interest or the death, insanity, incompetency, or Bankruptcy of a Partner shall be paid by the Partner or by the substitute Limited Partner.

### ARTICLE IX.   DISSOLUTION, LIQUIDATION, AND TERMINATION

### Dissolution

9.01 a.Except as otherwise expressly provided in this Agreement, the Partnership shall be dissolved upon the occurrence of any of the following events:

(1) The occurrence of a Terminating Event with respect to a General Partner unless all of the remaining General Partners elect to continue the business of the Partnership;

(2) If there is only one General Partner, the occurrence of a Terminating Event with respect to that General Partner; provided, however, that the Partnership shall not be liquidated pursuant to Section 9.02 if the Limited Partners designate a Successor General Partner pursuant to the provisions of Section 4.10;

(3)  The divesting by the Partnership of all or substantially all of its assets and any property, real or personal, that it may receive resulting from a sale, exchange, or other disposition of its assets;

(4)  The agreement of the General Partner and of Limited Partners holding at least 75 percent of the Limited Partners' Percentage Interests;

(5)  Any other event that, under the Uniform Limited Partnership Law, would cause the dissolution of a limited partnership; or

(6)  The expiration of the term provided in Section 2.06.

b.   Dissolution shall be effective on the date of the event giving rise to the dissolution, but the Partnership shall not terminate until its assets have been distributed in accordance with the provisions of this Article.

c.   The   death,   insanity,   incompetency,   bankruptcy, insolvency, or similar event of dissolution or liquidation of a Limited Partner shall not cause the dissolution of the Partnership.

### Liquidating Trustee

9.02 a.   On dissolution of the Partnership, the General

Partner shall be the Liquidating Trustee, unless the dissolution occurs as a result of a Terminating Event with respect to a sole General Partner, in which event the Liquidating Trustee shall be selected by Limited Partners holding at least a majority of the Limited Partner's Percentage Interests.

On dissolution of the Partnership, the Liquidating Trustee shall proceed diligently to wind up the affairs of the Partnership and distribute its assets in the following order of priority:

(1)  To the payment of the debts and liabilities of the Partnership (other than those to Partners) and expenses of liquidation;

(2)   To the setting up of any reserves that the Liquidating Trustee may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership arising out of or in connection with the Partnership; provided that the reserve shall be paid over by the Liquidating Trustee to a person (if an individual, not one in the employ of any Partner), as escrow holder, to be held by that person (or a designated successor) for the purpose of disbursing the reserve in payment of any of the aforementioned contingencies and, at the expiration of such period as the Liquidating Trustee shall deem advisable, to distribute the balance remaining in the manner provided below;

(3)  To the repayment of any advances that may have been made by any of the Partners to the Partnership, but if

the amount available for repayment shall be insufficient, then pro rata in accordance with the amounts of the advances; and

(4)  To the Partners as provided in Section 6.05.

b.  Pending distribution, the Liquidating Trustee shall continue to exploit the rights and properties of the Partnership consistent with their liquidation, exercising in all the power and authority of the General Partner as set forth in this Agreement.

### Accounting of Dissolution

9.03 Upon dissolution of the Partnership, the Liquidating Trustee shall cause the partnership's accountant to make a full and proper accounting of the assets, liabilities, and operation of the Partnership, as of and through the last day of the month in which the dissolution occurs.

### Distribution in Kind

9.04 No Limited Partner shall have the right to demand and receive property other than cash.  The Liquidating Trustee shall, in any event, have the power to sell the Partnerships assets for cash in order to provide for payment of liabilities and establish a reserve as aforesaid or otherwise.  All saleable assets of the Partnership may be sold in connection with any liquidation at public or private sale at such price and upon such terms as the Liquidating Trustee, in his or her sole discretion, may deem advisable.  Any Partner and any partnership, corporation, or other firm in which any Partner is in any way interested may purchase assets at any liquidation sale Distributions of Partnership assets

may be made in cash or in kind, in the sole and absolute discretion of the Liquidating Trustee.

ARTICLE X.   **REPRESENTATIONS, WARRANTIES, AND AGREEMENT OF PARTNERS**

**Representations, Warranties and
Agreements of the Limited Partners**

10.01     Each Limited Partner represents and warrants as follows:

a.   The Limited Partner has full right, power, and authority to execute and deliver this Agreement and to perform each of his or her obligations under this Agreement.  This Agreement has been duly executed and delivered by or on behalf of the Limited Partner and constitutes the valid and binding obligation of the Limited Partner in accordance with its terms.  The Limited Partner is not subject to any restriction or agreement that prohibits or would be violated by the execution and delivery of this Agreement or the consummation of the transaction contemplated in this Agreement or pursuant to which the consent of any third person, firm, or corporation is required in order to give effect to the transactions contemplated in this Agreement.

b.   The Limited Partner (1) has sufficient knowledge of business and financial affairs to enable him or her to understand the speculative nature of and the risks attendant to investments in securities in general and to an investment in the Partnership in particular, and to understand the particular financial, legal, and tax implications of the business to be conducted by the Partnership; (2) has determined on the basis of consultation with

his or her own legal and tax advisors that the purchase of an interest in the Partnership is consistent with his or her own investment objectives and income prospects; and (3) has had access to any and all information concerning the Partnership that the Limited Partner and his or her legal tax advisors requested or considered necessary to make a proper evaluation of the investment.

c. The Limited Partner understands that the Partnership interests being acquired have not been registered under the Securities Act of 1933, as amended (Securities Act), on the ground that investment in the Partnership is exempt under Section 4(2) of the Securities Act or the rules and regulations under the Securities Act as not involving a public offering. Such Limited Partner represents that he or she is acquiring his or her interest in the Partnership for investment for his or her own account with no present intention of reselling or otherwise disposing of the interest, and understand that the reliance of the General Partner upon the exemption is predicated upon the lack of that intention. The Limited Partner realized that in the opinion of the Securities and Exchange Commission the statutory basis for the exemption would be present if, notwithstanding this representation, the Limited Partner contemplates acquiring his or her interest in the Partnership for resale upon the occurrence or nonoccurrence of some predetermined event. In view of this opinion, the Limited Partner confirms the meaning of his or her representation to be that he or she does not now intend to dispose of all or any portion of his or her Partnership interest, that to the best of this or her knowledge

and belief there are no circumstances in the foreseeable future of which he or she is aware that would require the resale of any portion of the interest and that he or she will in no event sell, transfer, or otherwise dispose of his or her interest in the Partnership or any portion of it, unless, in the opinion of counsel to the Partnership, the interest may be legally sold, transferred, or otherwise disposed of without registration or qualification under the Securities Act and under other applicable state or Federal statutes, or the interest shall have been so registered or qualified and a registration statement shall then be in effect with respect to it. The Limited Partner further acknowledges his or her understanding that no trading market for interests in the Partnership does or will exist at any time and that his or her interest will at no time be transferable without potential adverse tax consequences. The Limited Partner further understands that the disposition of his or her interest in the Partnership is also limited by other provisions of this Agreement.

### Representations, Warranties, and Agreements of the General Partner

10.02    The General Partner represents to, warrants to and confirms and agrees with the Partnership and the other Partners as follows:

a.    He or she has full right, power, and authority to execute and deliver this Agreement and to perform each of his or her obligations under it.  This Agreement has been duly executed and delivered by the General Partner and constitutes the valid and

binding obligation of the General Partner in accordance with the terms. The General Partner is not subject to any restriction or agreement that prohibits or would be violated by the execution and delivery of this Agreement or the consummation of the transactions contemplated in this Agreement or pursuant to which the consent of any third person, firm, or corporation is required in order to give effect to the transactions contemplated in this Agreement.

### ARTICLE XI.   **GENERAL PROVISIONS**

#### Notices

11.01   Any notice or consent required by or provided for by any provision of this Agreement shall be in writing and shall be deemed to have been duly and properly given or served for any purpose only if delivered personally with receipt acknowledged or sent by registered or certified mail, return receipt requested, postage and charges prepaid and addressed, to the address of the Partner who is to receive the notice or consent, as set forth on Exhibit A.

Partners may change their addresses for the purpose of this Section 11.01 by notice to the Partnership at its principal office in the manner provided for in this Article. Any notice, consent, or other communication regarding a change of address shall be deemed to have been give the day it was received by the Partnership or personally delivered with receipt acknowledged.

#### Further Assurances

11.02   Each of the Partners agrees to execute, acknowledge, deliver, file, record, and publish all further certificates,

instruments, agreements and other documents, and to take all further action required by law or deemed by the General Partner to be necessary or useful in furtherance of the Partnership's purposes and the objectives and intentions underlying this Agreement and not inconsistent with the terms of this Agreement.

### Choice of Law

11.03    This Agreement and all matters relating to the Partnership shall be governed by and construed in accordance with the laws of the State of New Jersey.

### Entire Agreement

11.04    This instrument incorporates the entire agreement among the Partners, regardless of anything to the contrary contained in the Certificate or other instrument, memorandum, or notice purporting to summarize the terms of this Agreement, whether or not it is recorded or published.

### Amendments

11.05    This Agreement may not be modified or amended except as otherwise provided in this Agreement and with the consent of all of the General Partners and a majority in interest of the Limited Partners; provided, however, that when the consent of a greater percentage in interest of the Limited Partners shall be required for taking action under this Agreement, the consent of that greater percentage in interest of the Limited Partners shall be required in order to modify or amend those provisions. Upon the effectiveness of any modification or amendment, all of the Partners, whether or not consenting to the amendment, shall be bound by the terms and

provisions of the modification or amendment as if they had so consented; provided, however, that no amendment may change the Partnership into a general partnership, reduce the liabilities, obligations, or responsibilities of the General Partner, increase the liabilities of the Limited Partners, or amend is in writing executed by the General Partner and by all Limited Partners.

### Number

11.06    Unless the context otherwise requires, when used in this Agreement, the singular includes the plural and vice versa. A person is deemed to include a person, firm, corporation, or other entity.

### Benefit

11.07    This Agreement is binding on and inures to the benefit of the Partners and their heirs, legal representatives, successors, and permitted assigns.

### Captions

11.08    Captions are inserted for convenience only and shall not be given any legal effect.

### Powers of Attorney

11.09    Each of the Limited Partners (including any substitute or additional Limited Partner who becomes a party to this Agreement or becomes entitled to the benefits of its provisions after the date of this Agreement), irrevocably constitutes and appoints the General Partner, any Additional General Partner, and any Successor General Partner, as his or her true and lawful attorney-in-fact, with full power and authority in

his or her name and place, to make, execute, acknowledge or swear, deliver, record, and file:

a.   The Certificate and any amendment to the Certificate required under the Uniform Limited Partnership Law.

b.   Any amendment to this Agreement adopted in accordance with the provisions of this Agreement governing adoption of amendments.

c.   All documents and instruments that may be required to effect the dissolution and termination of the Partnership in accordance with this Agreement; and

d.   All other documents and instruments that the General Partner shall deem necessary of appropriate in the conduct of the Partnership business or the exercise of its powers, including, but not limited to, instruments of conveyance of any Partnership property, real or personal, or any interest in Partnership property.

The foregoing power of attorney is a special power of attorney coupled with an interest, is irrevocable and shall survive the death, insanity, incompetency, legal incapacity, Bankruptcy, or dissolution of any Partner, including, without limitation, a Limited Partner.   It may be exercised by the General Partner by executing any instrument as a Limited Partner; and shall survive the sale, transfer, or assignment of the Limited Partner's interest in the Partnership.   However, when the General Partner has consented to the admission of the person to whom the interest has been conveyed as a substitute Limited Partner in accordance with

\ira\5801LPR.get      03/13/95                                    45

the provisions of the Partnership Agreement, the power of attorney shall survive the delivery of the assignment for the sole purpose of enabling the General Partner to execute, acknowledge, and file any document, certificate, instrument, or amendment to the Partnership Agreement necessary to effect the substitution.

In addition, each Limited Partner agrees to execute and deliver to the General Partner within five days after receipt of a request from the General Partner, any other and further powers of attorney and other instruments that the General Partner shall deem necessary to comply with any laws, rules, or regulations relating to the formation of the Partnership or the conduct of business by the Partnership.

### Execution

11.10     This Agreement may be executed in any number of counterparts, and each counterpart will, for all purposes, be deemed an original instrument, but all counterparts together will constitute but one and the same Agreement.

**Magnetic Services, Inc.**

by: _____
Mark Berger, President

Dated: _____ , 1995

\ira\5801LPR.get     03/13/95                                        46

**LIMITED PARTNERS**

_____ [signature of limited partner]

_____ [typed name]

_____ [signature of limited partner]

_____ [typed name]

_____ [signature of limited partner]

_____ [typed name]


STATE OF                )
COUNTY OF               ) ss.:


    On this        day of              , 199  , before me, the subscriber, personally appeared                        who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon they acknowledged and reaffirmed that they signed, sealed and delivered the same as their act and deed, for the purposes therein expressed.


_____


\ira\5801LPR.get      03/13/95                                                      47

## EXHIBIT A

**New Jersey MR Imagining L.P**, a New Jersey Limited Partnership

| Name | Address | Number of Units | Total Principal Amount Of Limited Partner's Notes | Percentage Interest in Profits and Losses |
|------|---------|-----------------|---------------------------------------------------|-------------------------------------------|
| ____ | ____ | ____ | ____ | ____ |

### Limited Partners

Total

| Name | Address | Number of Units | Principal Amount Of Limited Partner's ~~Notes~~ CONTRIBUTION | Percentage Interest in Profits and Losses |
|------|---------|-----------------|-------------------------------------------------------------|-------------------------------------------|
| ROBERT S. GETTINGER | NYC | 1 | $150,000.00/100 | 25% |
| RUTH MADOFF | NYC | 1 | $150,000.00/100 | 25% |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## ADDENDUM

The following are changes to the Limited Partnership Agreement of NEW JERSEY M.R. IMAG-ING, L.P. Each change will be referred to by page, article and, where applicable, section number.

1.   P. 3, Art. I - The 4th and 5th paragraphs shall be deleted in their entirety and replaced by the following:

> "'Limited Partner's Contribution' means the capital contribution of each Limited Partner, payable as follows: Eight Thousand Two Hundred Fifty and 00/100 ($8,250.00) Dollars upon the signing of this Agreement, and the balance of One Hundred Forty-One Thousand Seven Hundred Fifty and 00/100 ($141,750.00) Dollars, payable in installments from time to time, in amounts equal to Partner-ship cash expenses as and when needed, payable within seven (7) days after notice from the General Partner, the total of which, to wit, One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars, shall constitute a 'Unit' of Limited Partnership."

The last line on page 3 shall be amended by deleting the word "Notes" and replacing it with the phrase "Contribution or Unit".

2.   P. 5, Art. I - The final paragraph of this Article, beginning with the word "'Unit'" and ending with the word "Notes" shall be deleted in its entirety.

3.   P. 7, Art. III - §3.01 of this Article shall be deleted and replaced by the following:

> "Each Partner shall contribute to the capital of the Partnership as hereinbefore and hereinafter provided."

§3.02 of this Article shall be deleted and replaced by the following:

> "Upon the formation of the Partnership, the General Partner shall contribute an amount equal to the percentage that a Limited Partner's contribution bears to the total Unit and, in like manner, from time to time thereafter, shall contribute an amount equal to the percentage of such Limited Partner Contribution per Unit."

§3.03 of this Article shall be deleted in its entirety and replaced by the following:

> "3.03  Each Limited Partner's Contribution shall be paid as provided on page 3 of this Agreement under the definition 'Limited Partner's Contribution'. The Limited Partner(s) acknowledges that additional amounts over and above each Limited Partner(s) Contribution or Unit in excess of $150,000.00, and the General Partner's Contribution of $50,000.00, may be necessary to fully fund the Partnership, based upon a reasonable estimate of additional expenses needed, after utilizing such Contributions.  Such additional amounts shall not exceed the sum of Fifty Thousand and 00/100 ($50,000.00) Dollars/Unit, 'Overcall'.  The Limited Partner(s) shall be given two (2) weeks to pay all or any part of the Overcall, upon written notice from the General Partner, in which event § 4.05 II of Article III shall apply.  To conform herewith, § 4.05 II on page 17, § 6.02 II on page 24, § 6.03 II on page 25 and § 6.05 II on page 26 shall be deleted and replaced by the following:

'II.   If the Limited Partners contribute Three Hundred Thousand and One and 00/100 ($300,001.00) Dollars to Four Hundred Thousand and 00/100 ($400,000.00) Dollars, forty-five (45%) percent.'

(a)   If any payments constituting up to $50,000. of the Overcall are not met by either or both of the Limited Partners, then the General Partner and/or new investors can purchase a five (5%) percent interest in the Partnership, to wit, a two-and-a-half (2½%) Limited Partners' interest (combined), and a two-and-a-half (2½%) General Partner Interest, for up to such $50,000. of Overcall (if such purchase is made by the General Partner, he shall only receive the 2½% Limited Partners' Interest), which shall reduce both the Limited Partners' (combined). and General Partner's interest and percentage by such respective 2½%, and such person or party shall be entitled to recoup his investment from Partnership distributions or profits before the Limited Partners and General Partner share in or receive any Partnership Distributions or profits. In like manner, any payments constituting the Overcall, in excess of $50,000., shall result in an additional 2½% purchase of Limited Partners' interest (combined) and a 2½% General Partner's interest, which shall reduce the Limited Partners' (combined) and General Partner's interest and percentage by such respective 2½% with the same recoupment benefit.

4.   P. 8, Art. III, § 3.04 - The first two lines of the paragraph shall be deleted and replaced by the following:

"If a Limited Partner shall fail to pay when due any one or more of his or her installments of Limited Partner's Contributions (excluding Overcall, the nonpayment of which shall not be deemed a default), that Limited Partner..."

At the end of the second line of subdivision (a) of this section, the word "Notes" shall be deleted and replaced by the word "Contribution", and on the fourth line, the phrase beginning with the word "and" and ending with "including without" shall also be deleted.

The footnote at the bottom of the page shall be be deleted along with the footnote allocation "1" to the upper right of the page heading.

5.   PP. 9 & 10, Art. III - In subdivisions (a) and (b), the word "Notes" shall be replaced by the word "Contribution".

6.   P. 9, Art. III, Subdivision (c) - On lines 3 and 4 the words "as defined in Section 304(e)" shall be deleted and replaced by "the difference between what the Defaulting Limited Partner paid in for his Unit, subtracted from the original unit cost of $150,000."

7.   P. 9-12. Art. III - Subdivisions (d) through (h) shall be deleted in their entirety and replaced by a new subdivision (d) as follows:

"(d)   Notwithstanding anything to the contrary contained in subdivisions (a), (b) and (c) of this section, a Defaulting Limited Partner shall have no liability to the Partnership in the event a new Limited Partner pays the unpaid part of the Defaulting Limited Partner's Contribution, to wit, the difference between what the original Limited Partner paid, subtracted from the original Unit cost of $150,000., also referred to as "Purchase Price" in (c)."

8.  P. 17, Art. III, § 4.01 - the sentence beginning with the words "However, the General Partner(s)", shall be deleted and replaced by the following sentence:

> "However, the General Partner(s) will defer any profit or other distributions until the Original Limited Partners and General Partner have received back their respective original Capital Contributions and/or Overcall, whatever they may be, the Overcall first, then the original Capital Contributions, whatever they may be, in the percentage each bears to the total."

Section 4.05 III shall be deleted in its entirety.

9.  P. 24, Art. III - Section 6.02 III shall be deleted in its entirety.

10.  P. 25, Art. III - Section 6.03 III shall be deleted in its entirety.

11.  P. 26, Art. III - Section 6.05 III shall be deleted in its entirety.

12.  Notwithstanding anything to the contrary contained in the Agreement, the Radiologist fee will be One Hundred and 00/100 ($100.00) Dollars/Exam, not to exceed, however, seventeen (17%) percent of the actual collected revenue, computed and adjusted no less frequently than every six (6) months.