**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

              -against-                         09 Cr. 213 (DC)

BERNARD L. MADOFF,                    Filed Electronically

                          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

EPSTEIN, BECKER & GREEN, P.C.,

                          Interested Party
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE**
**GOVERNMENT'S MOTION TO DISMISS THE THIRD-PARTY PETITION**
**OF EPSTEIN, BECKER & GREEN, P.C.**

PREET BHARARA
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007
Telephone:  (212) 637-1945/1048
Facsimile:  (212) 637-2930
E-mail:  matthew.schwartz@usdoj.gov

MATTHEW L. SCHWARTZ
BARBARA A. WARD
Assistant United States Attorneys
    - Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Law Firm Has Abandoned All of the
           Arguments In Its Petition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    The Law Firm Does Not Have a Lien on the Funds. . . . . . . . . . . . . . 3

           1.    The Law Firm May Not Raise New Theories
                  Absent From Its Petition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

           2.    The Law Firm Fails To State a Lien Claim. . . . . . . . . . . . . . . . 5

    C.    The Law Firm's Equitable Estoppel Argument Is Meritless. . . . . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

The United States of America, by and through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion to dismiss the Petition[1] of Epstein, Becker & Green, P.C.

## PRELIMINARY STATEMENT

A lien — such as the one the Law Firm claims it has — is certainly a legal "interest" in forfeitable property that might give rise to a valid third-party petition. The problem (from the Law Firm's perspective) is that it does not have a lien, meaning it cannot show that it has a specific interest in the Funds as required by the forfeiture laws.  Even if it did have a lien, moreover, the Law Firm failed to raise that interest in its Petition, meaning that it cannot meet the procedural requirements under the forfeiture laws.  As a result, the Court should dismiss the Petition and release the Funds to the Government, for distribution to the victims of Madoff's crimes.

## ARGUMENT

### A.    The Law Firm Has Abandoned All of The Arguments In Its Petition

Although the Petition argued that the Funds were not properly forfeitable in the first place because they were not proceeds of Madoff's fraud, *see* Petition at 5, the Government conclusively demonstrated to the contrary (and that EBG had no standing to raise the argument) in its moving papers, *see* Gov. Mem. at 21-23, and the Law Firm does not argue otherwise in its opposition brief.

---

[1]    Except where noted, all capitalized terms have the same meaning as in the Government's moving brief.

The Petition then argued that, even if forfeitable, the Law Firm has a cognizable property interest in the Funds because it had an "agreement" with Ruth Madoff for its reasonable attorney's fees, permitting it to be paid as a "trade creditor." *See* Petition at 6-7.  As the Government pointed out in its moving brief, however, contract claims do not give rise to a sufficient property interest under the forfeiture laws, and the cases relied upon by the Law Firm (holding that legal fees are not forfeitable) were, besides being irrelevant, squarely overruled by the Supreme Court.  Moreover, the Government observed that the Law Firm — like the rest of the world — was well aware that Ruth Madoff's interest in the Funds was forfeitable at the time it executed the Settlement.  *See* Gov. Mem. at 26-30.  The Law Firm likewise does not renew these arguments in its opposition brief.

Having failed to advance *any* of the theories contained in the Petition, the Court should dismiss the Petition as abandoned.  *See, e.g., Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff's "failure to pursue [a retaliatory abandonment] claim beyond her complaint constituted abandonment" of that claim when she failed to defend it in response to motion to dismiss); *see also Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 84 n.7 (S.D.N.Y. 2010) ("In their opposition to the motion to dismiss, Plaintiffs allege for the first time that Chubb and FIC may be sued on a breach of contract claim under a 'de facto contract' theory.  Plaintiffs have never before advanced this particular theory, and have cited to no authority to support it. Accordingly, the Court cannot retain Chubb or FIC in these actions on

2

this theory of liability.").

## B.    The Law Firm Does Not Have a Lien on the Funds

The flaws of the Petition having been effectively conceded, the Law Firm

concentrates its efforts in opposition on an argument contained nowhere in its

Petition: that it has a state-law lien on the Funds to the *quantum meruit* value of

its services.  Even if the Law Firm were entitled to raise this theory for the first

time in opposition to the Government's motion to dismiss, which it is not, the

Petition fails to plausibly allege facts that support it.[2]

### 1.    The Law Firm May Not Raise New Theories Absent From Its Petition

As an initial matter, the Law Firm's asserted lien on the Funds was not the

property interest asserted in the Petition.  Rather, the Petition claims a right to

recover from the Funds only as a "trade creditor," pursuant to a contract (the Fee

Agreement) to which Ruth Madoff was undisputedly not a party.  *See* Petition ¶ 17

(Law Firm's "interest arose as a result of the Firm's entitled to be paid reasonable

---

[2]      In its opposition, the Law Firm misstates the relevant legal standard, arguing that "a court may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle [the petitioner] to relief."  Opp. at 10.  In *Pacheco v. Serendensky*, the Second Circuit held that "a motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)."  393 F.3d 348, 352 (2d Cir. 2004).  While *Pacheco* then invoked the "any set of facts" test that prevailed at the time, the Supreme Court has subsequently imposed a more stringent "plausibility standard," noting that the "any set of facts" standard had "earned its retirement."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

attorney's fees, *pursuant to an agreement* between the Firm and its clients to be paid reasonable attorney's fees" (emphasis supplied)); *see also id.* at 6 (referring to the Law Firm as a "trade creditor that entered into a bona fide, arms length transaction with Ruth Madoff.").

As this Court has explained, "it is well-settled that a claim for relief may not be amended by the briefs in opposition to a motion to dismiss." *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 216 (S.D.N.Y. 1997) (Chin, *J.*) (internal quotation marks and citation omitted). *See also Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir.2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment"); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998) (plaintiff failed to state a securities fraud claim based on alleged failure to correct false financial information contained in prospectus, since "an alleged duty to correct d[id] not appear anywhere in the amended complaint and did not enter the case until Wright mentioned it for the first time in her opposition memoranda to the motion to dismiss"); *Allah v. Poole*, 506 F. Supp. 2d 174, 193 (W.D.N.Y. 2007) ("a memorandum of law or other motion papers are not proper vehicles by which to raise claims that are not asserted in the complaint"). Any claim under the New Jersey lien law should therefore be deemed waived.

This principle — that a plaintiff cannot amend her complaint through a lawyer's argument in a brief — has particular force in the forfeiture context, where

4

the Law Firm's change of course also divests it of standing.  The forfeiture laws

require that a petition "set forth the nature and extent of the petitioner's right, title,

or interest" in the property subject to forfeiture.  21 U.S.C. § 853(n)(3).  *See* Gov.

Mem. at 14-15.  As courts have recognized in the forfeiture context, state property

law is particularly "technical," *United States v. Neidig*, 253 Fed. Appx. 239, 241 n.6

(3d Cir. 2007) (per curiam and unpublished).  It is the petitioner's burden to identify

the legal basis for its claim under state law.  Were it otherwise, the Government

would be in the untenable position of scouring the law books of 50 states to

determine if the facts alleged in a petition give rise to some conceivably protectable

property interest.[3]  That is particularly so where, as here, (i) the petitioner is a law

firm, and (ii) the petition *does* identify a legal theory in its petition, which it then

abandons.

Thus, because the Law Firm's arguments were not raised in its Petition, the

Petition fails to comply with the technical requirements of section 853(n), and

should be dismissed for that reason alone.

### 2.    The Law Firm Fails To State a Lien Claim

In any event, based on the four corners of the Petition and the other

documents properly considered on this motion, the Law Firm has no lien on the

---

[3]    The lone case cited by the Law Firm for its argument is *United States v. Toma*, No. 94 Cr. 333, 1997 WL 467280 (N.D. Ill. Aug. 6, 1997).  *Toma* involved the forfeiture of cars, and the petitioner claimed that he had purchased the cars and acquired clear title to them, and that he had copied of the title certificates.  *Id.* at *2.  Thus, the *Toma* petition plainly identified the "nature" of the alleged interest in property.

Funds.  The Law Firm is probably correct to observe that New Jersey state law defines its asserted property interest in the Funds.  *See* Opp. at 11-12.[4]  *See, e.g., United States v. Nektalov*, 440 F. Supp. 2d 287, 295 (S.D.N.Y. 2006) (when claim is filed in the ancillary proceeding, court looks to state law to see what interest the claimant has in the property, and looks to the federal statute to see if that interest is subject to forfeiture).  The Law Firm also correctly observes that, under New Jersey law, an attorney has a lien on any recovery in "his client's favor," whether by verdict or settlement.  *See* Opp. at 12 (citing N.J.S.A. 2A:13-5, the New Jersey Attorney's Lien Act).

But none of this matters, because, as set forth in the Government's initial papers, there is nothing in the Petition that plausibly alleges an attorney-client relationship between the Law Firm and Ruth Madoff.  To the contrary, the Petition plainly alleges that the Law Firm had an attorney-client relationship with Robert Gettinger (the other limited partner), but that it never had any dealings whatsoever with Ruth Madoff, who executed neither the original Fee Agreement nor the ultimate Settlement papers.  There is no allegation, indeed, that anyone at the Law Firm ever met or even spoke to Ruth Madoff.  Suffice it to say that, under New Jersey law, where there is no attorney-client relationship, there is also no lien. *See*

---

[4]     The Law Firm, the partnership, and the litigation were all located in New Jersey, meaning that New Jersey law most likely controls.  On the other hand, Robert Gettinger was a resident of New York, and Ruth Madoff was a resident of New York and Florida.  This sort of ambiguity is precisely why the forfeiture laws require the petitioner to identify the precise nature of its asserted interest in property.

*Industry Network System, Inc. v. Armstrong World Industries, Inc.*, 54 F.3d 150, 153-54 (3d Cir. 1995) ("It is axiomatic, of course, that [a lawyer] must show that he is or will become entitled to a fee before he is entitled to a lien" under New Jersey's attorney lien law); *see also Fleet Bank N.H. v. Chain Const. Corp.*, 635 A.2d 1348, 1350 (N.H. 1993) ("In this case, Aivalikles was hired by NRI not Fleet, and the fee agreement for the Chain account was between Aivalikles and NRI.  No attorney-client relationship existed between Aivalikles and Fleet."); *cf. Morgan v. Chandler*, 241 S.W.3d 224, 228 (Ark. 2006) ("while an attorney's lien may in some instances be enforceable against another attorney, such a lien is not created where there is no attorney/client relationship."); *In re Chicago Flood Litig.*, 682 N.E.2d 421, 426 (Ill. App. Ct. 1997) (In order to create an effective lien there must be an attorney-client relationship").

The Law Firm makes two arguments in support of its claim that it validly represented Ruth Madoff, neither of which have merit.  *First*, EBG argues that its "representation of Ruth Madoff in the New Jersey Action demonstrates their attorney-client relationship," Opp. at 15.  But, of course, just because a lawyer says he represents a client does not make it so.  *See generally* Restatement (Second) Agency § 15 (requiring principal's consent for creation of agency relationship).  Nor does the fact that a lawyer's work may benefit someone make that someone a client — were it otherwise, the U.S. Attorney's Office and the liquidating trustee for Madoff's business would be the attorneys for his victims.

7

Indeed, the only case cited by the Law Firm on this point, *Herbert v. Haytaian*, 678 A.2d 1183 (N.J. Super. Ct. App. Div. 1996), bears no resemblance to this case. In *Herbert*, the plaintiff alleged that the defendant, who was then the Speaker of the New Jersey General Assembly, sexually harassed her. The issue was whether an attorney — who had previously undertaken an investigation of sexual harassment by state employees in a particular office, "at the request of Haytaian," the defendant — had an attorney-client relationship with him that would preclude the lawyer from representing the sexual-harassment plaintiff. *Id.* at 1185. The Court held that there was an attorney-client relationship, because the lawyer had been retained at Haytaian's express request and on terms demanded by him: "When, as here, the prospective client requests the lawyer to undertake the representation, the lawyer agrees to do so and preliminary conversations are held between the attorney and client regarding the case, then an attorney-client relationship is created." *Id.* at 1188.

That was not the case between the Law Firm and Ruth Madoff. Indeed, as the *Herbert* opinion makes clear, a dispositive factor in determining whether an attorney-client relationship exists under New Jersey law is whether "a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person." *Id.* (quoting *The Restatement of the Law Governing Lawyers (Proposed Final Draft No. 1)* § 26 (1996)). Nowhere in the Petition does the Law Firm allege that Ruth Madoff had any contact whatsoever with EBG, let alone that she

8

manifested *to the Law Firm* her intent that it provide her legal services.  Without any allegation that Ruth Madoff at any time had any interaction with the Law Firm, the absence of her signatures on both the Fee Agreement and the Settlement make the existence of an attorney-client relationship implausible as a matter of law.

The Law Firm's only other argument — that if the Funds belonged to Ruth Madoff, then she must have been the Law Firm's client, *see* Opp. at 17-19, 22 — makes no sense.  The result of the New Jersey Litigation — in which the Law Firm surely *was* retained to represent Robert Gettinger in his desire to hasten the unwinding the partnership — was to distribute the partnership's assets.  Ruth Madoff was a limited partner, and a share of those assets belonged to her.  That fact relies in no way on whether the Law Firm represented her; rather, the Law Firm represented Gettinger, and achieved a result that also arguably would inure to Ruth Madoff's benefit — or at least it would have, but for the forfeiture.  That does not create an attorney-client relationship, and it does not entitle the Law Firm to fees from Ruth Madoff, let alone a lien on her share of the partnership assets. (Indeed, as set forth in the Government's moving papers, Gettinger had already agreed to cover the Firm's fees).

The Law Firm argues on this point that "because she accepted the benefit of EBG's representation, Ms. Madoff is still legally obligated to compensate EBG for the value of its legal services." Opp. at 17.  This argument is notably bereft of citation.  Rather, EBG cites a number of cases that hold that in the absence of a

valid fee agreement, a lawyer is entitled to recover in *quantum meruit*.  No doubt.
But as the Law Firm concedes, an element of a *quantum meruit* claim is still that
"the client accepted the services."  Opp. at 17-18 (internal quotation marks omitted).
As set forth above, there is no plausible allegation that Ruth Madoff ever accepted
the Law Firm's services, and she certainly never accepted the benefit of those
services, because she had forfeited any interest in the Funds before the Settlement
was consummated.

Finally, in support of the proposition that Ruth Madoff accepted its services,
the Law Firm points to a document not contained in its Petition, and so not properly
considered on a motion to dismiss.  *See* Opp. at 18 (citing an internal Law Firm
memorandum to file).  Even if documents outside of, and not integral to, the
pleadings were appropriately considered, the Law Firm's new evidence would be
utterly inadmissible.  That memo, a May 1, 2009 e-mail from a Law Firm associate
to his partner, says "Had a telephone conversation with Bob Gettinger.  He
indicated that he and Ruth agree to settle the entirety of the litigation as set forth
in my letter to him dated April 30, 2009."  Declaration of Daniel R. Levy, Exhibit 1.
This hearsay-within-hearsay is inadmissible.  Even if it were admissible, it would
prove, at best, that Gettinger represented that "he and Ruth agree" — consistent
with his previous representation that he was "authorized to act on [Ruth Madoff's]
behalf."  Petition, Exhibit I.  But at no point did Ruth Madoff ever manifest her
intention, to the Law Firm, that she wanted its services.  And, of course, Ruth
Madoff never signed that Settlement.

10

In short, absent some plausible allegation in the Petition, properly considered on this motion, that Ruth Madoff agreed for the Law Firm to represent her, the Law Firm simply cannot state a claim that it had an attorney-client relationship with her, and thus that it had a lien on the Funds.  And in the absence of a valid lien, the Law Firm has no legally cognizable interest in those Funds under the forfeiture laws.

**C.    The Law Firm's Equitable Estoppel Argument Is Meritless**

Finally, the Law Firm argues that the Government is equitably estopped from contesting its Petition by virtue of the parties' August 3, 2010 stipulation.  *See* Opp. at 13-15.  That argument absolutely misstates the terms of the stipulation and the context in which it was signed.  In the first place, the stipulation provides that "the Government does not intend to oppose the disbursement of reasonable fees and expenses *properly due and owing* the Firm for its work in the above-captioned case, consistent with any engagement materials, retainer, or fee agreement, *and the forfeiture laws*."  Stipulation at 3 (emphasis supplied).  As the Government's arguments make clear, the Law Firm's fees are not properly due and owing, and its Petition is not consistent with the forfeiture laws.[5]  The Government has therefore in no way retreated from its intentions, as reflected in the stipulation.

Moreover, the insinuation that the Government had somehow promised the Law Firm its fees absolutely ignores the context in which the stipulation was

---

[5]    Nor are the Law Firm's fees in any way reasonable, an issue the Government would raise were this motion to be denied.

signed.  Indeed, the directly preceding clause notes that the Government "has neither had access to the settlement agreement resolving the above-captioned case, if any, nor to the engagement materials or fee agreements between the plaintiffs and the Firm, if any."  *Id.*  Once the Government received those materials, it became crystal clear — for all the reasons given above and in the Government's initial papers — that the Law Firm had no valid interest in the Funds.

The subsequent correspondence cited by the Law Firm, *see* Opp. at 15, does nothing to change the fact that the Government consistently insisted upon substantiation for the amount and validity of the Law Firm's fees.  Indeed, the Law Firm conspicuously omits from that list of correspondence the Government's same-day response to its April 1, 2011 letter, in which the Government wrote:

> Thank you for your letter.  Unfortunately, I do not think it accurately reflects either our agreement or our subsequent conversations.  As is clearly set out in its whereas clauses, we entered into that stipulation before we had a chance to review any of the underlying material -- the engagement letter, settlement agreement, etc.  Nonetheless, it was our position then -- and remains our position now -- that we would not object to "reasonable fees and expenses" so long as they were (1) "properly due and owing to the Firm" and (2) their payment was "consistent with any engagement materials, retainer, or fee agreements, and the forfeiture laws."  Once we had an opportunity to review that material, I made clear to you on several occasions that we were unable to agree to a disbursement to your firm because, among other reasons, you did not have any documented attorney-client relationship with Ruth Madoff, who neither signed your engagement letter nor executed the settlement agreement.  For that and other reasons, we cannot consent to release funds to the firm, because to do so would be contrary to the forfeiture laws.

April 1, 2011 E-mail from Matthew L. Schwartz to Daniel R. Levy.[6]

Simply put, the parties' original stipulation reflects the Government's position — then, now, and always — that a third-party petitioner who can demonstrate an interest in property subject to forfeiture that is legally cognizable under the forfeiture laws should have that interest recognized.  Because the Law Firm's Petition makes clear that it does not have a valid property interest, its Petition should be dismissed; nothing in the stipulation suggests otherwise.

## CONCLUSION

For the reasons just given, the Court should grant the Government's motion and dismiss the Petition, with prejudice, in its entirety.

Dated:        July 1, 2011
              New York, New York

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

              By:     /s/  Matthew L. Schwartz
                              MATTHEW L. SCHWARTZ
                              BARBARA A. WARD
                              Assistant United States Attorneys
                              One Saint Andrew's Plaza
                              New York, New York 10007
                              Telephone:  (212) 637-1945/1048
                              Facsimile:  (212) 637-2930
                              E-mail:  matthew.schwartz@usdoj.gov

---

[6]       Because this correspondence is outside the pleadings and, in the Government's view, irrelevant to the motion, the Government has not attached a copy of this e-mail, but will provide one if it would aid the Court.

13