UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

                   :

UNITED STATES OF AMERICA

                   :

      - against -

                   :     **MEMORANDUM DECISION**

BERNARD L. MADOFF,

                   :     09 Cr. 213 (DC)

             Defendant.

                   :

EPSTEIN, BECKER & GREEN, P.C.,

                   :

             Petitioner.

                   :

- - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-3-2012

**APPEARANCES:**        PREET BHARARA, ESQ.
                        United States Attorney for the
                        Southern District of New York
                              By:  Matthew L. Schwartz, Esq.
                                   Barbara A. Ward, Esq.
                                   Assistant United States Attorneys
                        One Saint Andrew's Plaza
                        New York, New York  10007
                        Attorneys for United States of America

                        EPSTEIN, BECKER & GREEN, P.C.
                              By:  Daniel R. Levy, Esq.
                        One Gateway Center, 13th Floor
                        Newark, New Jersey  07102
                        Attorneys for Petitioner

**CHIN, Circuit Judge**

        In June 2007, petitioner Epstein, Becker & Green, P.C.

("EBG") began representing Ruth Madoff on a matter unrelated to

Bernard Madoff's criminal case.  On March 12, 2009, Bernard

Madoff pled guilty to securities fraud and related crimes that

began at least as early as the 1980s.  In May 2009, EBG attained

a settlement agreement on Ruth Madoff's behalf.  The funds due to Ruth Madoff under the settlement, however, were forfeited to the government because the settlement was reached after Bernard Madoff's guilty plea.

On March 14, 2011, pursuant to 21 U.S.C. § 853(n), EBG petitioned for a criminal forfeiture hearing.  EBG principally argues that it is entitled to legal fees totaling $24,790.86 from Ruth Madoff's forfeited settlement funds because:  (1) it holds a superior interest in such funds under 21 U.S.C. § 853(n)(6)(A); and (2) it is a bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(B).  On April 29, 2011, the government moved to dismiss the petition.

For the reasons set forth below, the government's motion is granted.  Accordingly, EBG's petition is dismissed.

## BACKGROUND

### A.    The New Jersey Action

On or about April 27, 1993, Robert S. Gettinger, Esq., and Ruth Madoff entered into a Partnership Agreement (the "Partnership Agreement") with Magnetic Services, Inc. ("Magnetic Services"), a New Jersey corporation.  (NJ Compl. 4).[1]  The

───────────────

[1]    References are as follows:  "NJ Compl." to the Complaint filed by EBG on behalf of Robert S. Gettinger and Ruth

Partnership Agreement created New Jersey MR Imaging, L.P. (the "Partnership") to:  lease an office in Hoboken, New Jersey; acquire a Magnetic Resonance Imaging (MRI) machine; and operate a medical center where magnetic imaging and related services would be provided.  (Pet. Ex. A 4).  Magnetic Services was the general partner and Gettinger and Ruth Madoff were limited partners. (Id. at 1, 10).  As limited partners, Gettinger and Ruth Madoff each contributed $150,000 to the enterprise and each was entitled to 25 percent of the Partnership's profits.  (Id. at 42, 67).

Under the Partnership Agreement, the Partnership was to dissolve on June 30, 2005, but would "not terminate until its

---

Madoff in the New Jersey District Court of June 29, 2007; "Inf." to the Information of March 10, 2009 charging Bernard Madoff with eleven counts of offenses related to the ponzi scheme that he orchestrated; "Forfeiture Order" or "POF" to this Court's Preliminary Order of Forfeiture/Final Order of Forfeiture of June 26, 2009; "Ruth Madoff Stipulation" or "Ruth Madoff Stip." to the Stipulation between Ruth Madoff and the government of June 29, 2009; "EBG Stipulation Agreement" or "EBG Stip." to the Stipulation between EBG and the government of August 3, 2010; "Pet." to the Third-Party Petition of Epstein Becker & Green, P.C. for Hearing on Forfeiture Proceedings Pursuant to 28 U.S.C. § 853 of March 14, 2011; "Gov. Mem." to Memorandum of Law in Support of the Government's Motion to Dismiss the Third-Party Petition of Epstein, Becker & Green, P.C. of April 29, 2011; "Schwartz Decl." to the Declaration of Assistant United States Attorney Matthew L. Schwartz of April 29, 2011; "EBG Mem." to the Memorandum of Law in Opposition to the Government's Motion to Dismiss the Third-Party Petition of Epstein Becker & Green, P.C. of June 3, 2011; "Levy Decl." to the Declaration of EBG attorney Daniel R. Levy of June 3, 2011.

assets [had] been distributed." (Id. at 4-5).  By June 2007, two years after the predetermined dissolution date, the Partnership's assets had not been liquidated and distributed to Gettinger and Madoff as limited partners.  (NJ Compl. 1-2).  The limited partners consequently engaged EBG to initiate a breach of contract claim against Magnetic Services and its President, Dr. Mark Berger.[2]  (Pet. Ex. I).  On June 29, 2007, EBG filed a complaint in the United States District Court for the District of New Jersey (the "New Jersey Action").  (Pet. Ex. A).

**B.    The Madoff Forfeiture**

On December 11, 2008, Bernard Madoff was arrested.  On March 10, 2009, Bernard Madoff was charged by information with eleven counts of offenses related to the ponzi scheme that he facilitated through his investment advisory firm, Bernard L. Madoff Investment Securities.  (Inf. ¶¶ 15-41).  The scheme was alleged to have begun at least as early as the 1980s, continuing

---

[2]    The government contends that EBG was not engaged by Ruth Madoff.  (See Gov. Mem. 12, 23-24).  In light of this decision dismissing EBG's petition, this issue need not be resolved.

until the time of Madoff's arrest.  (<u>Id.</u> ¶ 4).  The Information

also included two forfeiture allegations.[3]  (<u>Id.</u> ¶¶ 42-45).

On March 12, 2009, Bernard Madoff pled guilty to all

eleven counts of the March 10, 2009 Information.  On June 29,

2009, I sentenced him to 150 years' imprisonment.  (Judgment, ECF

Doc No. 100, 4, <u>United States v. Madoff</u>, No. 09 Cr. 213 (S.D.N.Y.

June 29, 2009)).  On June 26, 2009, I entered a Forfeiture Order

including criminal forfeiture money judgments totaling

$170,799,000,000 and the forfeiture of specific property.  (POF

6).  The specific property included "any and all ownership

interest held in the name of Ruth Madoff and/or Bernard Madoff in

the assets of any and all corporations, partnerships or other

entities, and/or their subsidiaries, affiliates, and joint

ventures."  (POF Ex. A ¶ 19).

By a separate Stipulation and Order dated June 29,

2009, Ruth Madoff agreed to be bound by the terms of the

Forfeiture Order as if they applied equally to her.  Apart from

_____

[3]     The first forfeiture allegation related to the
offenses charged in Counts One, Three, Four, and Eleven of the
Information, which constitute "specified unlawful activity" as
defined by 18 U.S.C. § 1956(c)(7).  (Inf. ¶¶ 42-43).  The second
allegation sought criminal forfeiture, pursuant to 18 U.S.C. §
982, of all property involved in the money laundering offenses.
(Inf. ¶¶ 44-45).

the $2,500,000 that the government permitted Ruth Madoff to retain, she expressly agreed to forfeit to the United States "any and all property and other interests belonging to, owed to or controlled in whole or in part by Ruth Madoff, and all property traceable to such property." (Ruth Madoff Stip. ¶ 9).

C.   **The New Jersey Action Settlement**

On May 14, 2009, approximately five months after Bernard Madoff's arrest, the New Jersey Action was settled. (Pet. Ex. B). On January 4, 2010, in light of Madoff's conviction and its related forfeitures, the New Jersey District Court ordered Magnetic Services to deliver the settlement funds due to Ruth Madoff to the cashier of the New Jersey District Court. (Pet. Ex. C). On January 8, 2010, pursuant to this order, Magnetic Services deposited a total of $61,993 to the cashier of the New Jersey District Court. (Pet. Ex. D).

D.   **EBG's Stipulation with the Government**

On August 3, 2010, EBG and the government entered into the EBG Stipulation. EBG conceded that the settlement funds retained by the New Jersey District Court were encompassed by the Forfeiture Order. (Pet. Ex. F 2). Accordingly, on or about October 26, 2010, the New Jersey District Court transferred the settlement funds to the cashier of this Court. (Id. at 3).

-6-

In the EBG Stipulation, the government stated that it did not "intend to oppose the disbursement of reasonable fees and expenses properly due and owing to [EBG]," but it had not yet "had access to the settlement agreement resolving [the case] . . . nor to the engagement materials or fee agreements between [Madoff and Gettinger] and [EBG]."[4]  (Id.).  The parties agreed that any disbursement that occurred would be "consistent with any engagement materials, retainer, or fee agreements, and the forfeiture laws."  (Id.).

E.    EBG's Petition

On March 14, 2011, pursuant to 21 U.S.C. § 853(n), EBG submitted a third-party petition for a criminal forfeiture hearing to assert a claim to the New Jersey Action settlement funds.  The government subsequently moved to dismiss.

## DISCUSSION

A.    Legal Standard for a Motion to Dismiss a Third-Party Petition in a Forfeiture Proceeding

A third party may petition the court for a hearing to adjudicate its purported interest in property subject to criminal forfeiture under 21 U.S.C. § 853(n)(2).  Such petitions must "set

---

[4]    The EBG Stipulation also vacated this Court's November 6, 2009 Sealing Order for the Settlement Agreement between Ruth Madoff, Gettinger, and Magnetic Services.  (Pet. Ex. F 3).

forth the nature and extent of the petitioner's right, title, or interest in the property, [and] the time and circumstances of the petitioner's acquisition of the right, title, or interest." 21 U.S.C. § 853(n)(3).

A motion to dismiss a third-party petition asserting an interest in property subject to a criminal forfeiture proceeding is treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). Pacheco v. Serendesky, 393 F.3d 348, 352 (2d Cir. 2004). The petition must set forth "'enough facts to state a claim to relief that is plausible on its face'" to survive dismissal. Willis Mgmt. Ltd. v. United States, 652 F.3d 236, 241-42 (2d Cir. 2011) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although the court must assume the facts set forth in the petition as true, Fed. R. Crim. P. 32.2(c)(1)(A), the court is not required to accept legal conclusions advanced by the parties. Willis Mgmt., 652 F.3d at 242. In considering EBG's petition, this Court therefore assumes all the facts set forth in the petition and accompanying exhibits to be true and draws all reasonable inferences in favor of EBG.

B.   <u>EBG's Claims Under 21 U.S.C. § 853(n)</u>

A third-party petitioner may establish a valid interest in forfeited property and obtain relief under § 853(n) in two ways.  <u>See</u> 21 U.S.C. § 853(n)(6)(A), (B).  First, under § 853(n)(6)(A), a petitioner can establish, by a preponderance of the evidence, that he has a legal interest in the property that "renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in [him] rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts" giving rise to the forfeiture.  21 U.S.C. § 853(n)(6)(A).  Second, under § 853(n)(6)(B) the petitioner can establish, by a preponderance of the evidence, that he is a bona fide purchaser for value of the property who was reasonably without cause to believe that the property was subject to forfeiture at the time of the purchase.  21 U.S.C. § 853(n)(6)(B).  A legal interest is required to obtain an ancillary hearing under both § 853(n)(6)(A) and (B).  21 U.S.C. § 853(n)(2); <u>see</u> <u>United States v. Ribadeneira</u>, 105 F.3d 833, 835 (2d Cir. 1997) (per curiam) (noting "§ 853(n)(6)'s reference to a right, title, or interest in the property . . . [is] the same as § 853(n)(2)'s requirement of a legal interest in property, which is necessary for

-9-

standing") (internal quotation marks omitted).  Additionally, the forfeitability of third-party interests is determined by federal law, while their existence is determined by state law.  See United States v. Hooper, 229 F.3d 818, 820 (9th Cir. 2000); United States v. Peterson, No. 04 Cr. 752, 2011 WL 5110246, at *4 (S.D.N.Y. Oct. 28, 2011).

EBG argues that it is entitled to a portion of the settlement funds from the New Jersey Action because:  (1) it holds a legal interest superior to that of the government, see 21 U.S.C. § 853(n)(6)(A); and (2) it is a bona fide purchaser for value, see 21 U.S.C. § 853(n)(6)(B).  (Pet. 6).  Each claim is discussed in turn.

1.  **21 U.S.C. § 853(n)(6)(A)**

a.  **Applicable Law**

Under 21 U.S.C. § 853(n)(6)(A), a third-party petitioner may prevail if he establishes that his "legal right, title, or interest in the property" in question is superior to that of the government "at the time of the commission of the act which gave rise to the forfeiture."  See 21 U.S.C. § 853(n)(6)(A); Pacheco, 393 F.3d at 353.

First, a legal interest sufficient to establish a "right, title, or interest in the [forfeited] property" under §

-10-

853(n)(6), must be "in a particular, specific asset, as opposed
to a general interest in an entire forfeited estate or account."
Ribadeneira, 105 F.3d at 836-37.  The Second Circuit thus denies
standing to general creditors under § 853(n)(6).[5]  Id.  A general
creditor, "upon giving credit, takes no right against specific
property of the debtor."  Black's Law Dictionary 425 (9th ed.
2009); see also United States v. Schwimmer, 968 F.2d 1570, 1579
(2d Cir 1992) (stating a general creditor does not "assert either
title to or interest in any specific asset in [a] combined
forfeiture pool").  To have a claim in the specific property, a
creditor, therefore, must secure a judgment or perfect a lien
against a particular item.  See Ribadeneira, 105 F.3d at 836.

        Second, an interest in criminally forfeited property is
superior to the government's interest if it arose before the
government's interest vested.  See 21 U.S.C. § 853(n)(6)(A);
Pacheco, 393 F.3d at 353; Hooper, 229 F.3d at 821.  Under the
"relation back doctrine," the government's interest vests for
offense property -- "any property constituting, or derived from,

---

        [5]     Not all courts deny standing to general creditors under
§ 853(n)(6).  See United States v. Reckmeyer, 836 F.2d 200, 205
(4th Cir. 1987) ("We conclude that unsecured creditors of persons
whose property is subject to forfeiture have a 'legal interest'
in the debtor's property.").

-11-

any proceeds the person obtained directly or indirectly" as the result of the crime -- at the time of the commission of the acts giving rise to the forfeiture.[6]  See 21 U.S.C. § 853(a)(1), (c). The relation back doctrine serves the important purpose of preventing defendants from circumventing forfeiture by transferring property prior to their convictions.  Peterson, 2011 WL 5110246, at **6-7 (quoting United States v. Parrett, 530 F.3d 422, 430 (6th Cir.2008)).

      **b.**  **Application**

EBG's § 853(n)(6)(A) claim fails because it cannot assert a sufficient legal interest in the settlement funds.  EBG argues that it possesses a "lien interest" in the funds pursuant to New Jersey's Attorney's Lien Act (the "Act"), N.J. Stat. Ann. § 2A:13-5.  (EBG Mem. 12).  Indeed, the Act provides that "[a]fter filing a complaint . . . the attorney    . . . shall have a lien for compensation."  N.J. Stat. Ann. § 2A:13-5.  Under

---

      [6]    EBG has stipulated that Ruth Madoff's settlement funds constitute offense property.  (See EBG Stip. 2 (quoting the Forfeiture Order and noting that it includes "'[a]ny and all ownership interest held in the name of Ruth Madoff and/or Bernard Madoff in the assets of any and all corporations, partnerships, or other entities, and/or their subsidiaries, affiliates, and joint ventures' as well as 'any and all property and other interests in which the defendant has or will acquire an interest,' which includes the [New Jersey Action settlement] [f]unds.").

New Jersey law, however, merely filing a complaint does not establish possession of a lien interest. <u>See Hoffman & Schreiber v. Medina</u>, 224 B.R. 556, 561 (D. N.J. 1998) ("[C]reation of an interest in property is not synonymous with perfection of that interest."). To enforce a lien under the Act, an attorney must file an application with the court; otherwise, the attorney will lose the right to assert an attorney's lien against any proceeds derived from his services.[7] <u>Id.</u> at 562; <u>see also Musikoff v. Jay Parrino's The Mint, L.L.C.</u>, 796 A.2d 866, 873-74 (N.J. 2002) (discussing requisite filing to perfect lien interest under New Jersey law).

Here, EBG acknowledges that it did not "fil[e] a petition to enforce its lien in the New Jersey Court."[8] (EBG

---

[7] In <u>Hoffman & Schreiber</u>, the New Jersey District Court, applying New Jersey state law, found that "attorneys were not entitled to a lien on the fruits of their efforts" where they failed to follow the proper procedures in perfecting their liens. <u>Hoffman</u>, 224 B.R. at 563-64.

[8] EBG argues in its Opposition to the Government's Motion to Dismiss that the government should be equitably estopped from challenging its lien interest in the funds. (EBG Mem. 13). In EBG's initial petition, however, EBG merely argued that it "has a legal interest" in the settlement funds and that it "qualifies as a 'bona fide purchaser for value' under 28 U.S.C. § 853(n)(6)(B)." (Pet. 6-7). EBG's equitable estoppel argument is thus being made for the first time in its Opposition to the Government's Motion to Dismiss. (EBG Mem. 13). "[I]t is well-settled that a claim for relief may not be amended by the briefs

Mem. 14).  Thus, EBG does not possess a legal interest in the
funds under New Jersey state law.  Because EBG does not have a
lien, it does not possess a sufficient legal interest under
federal law to prevail under § 853(n)(6)(A).  Without a lien, EBG
cannot claim interest in a particular asset, and it is merely a
general creditor.  See Ribadeneira, 105 F.3d at 836-37 (finding
holders of checks drawn on forfeited accounts "have no specific
interest in property greater than that of a general creditor").
Because "a general creditor may [not] achieve standing," id. at
836,  EBG cannot demonstrate it possesses a legal "right, title,
or interest in the property," see 21 U.S.C. § 853(n)(6)(A), (B).

        Second, even assuming EBG had a valid interest in the
settlement funds, its claim fails under § 853(n)(6)(A) because
EBG's interest would not have predated commission of the acts
giving rise to the forfeiture.  Bernard Madoff's scheme began at
least as early as the 1980s (Inf. ¶ 4), and part of the property
subject to forfeiture from this scheme included Ruth Madoff's
assets (POF Ex. A ¶ 19).  Given that EBG's interest could not

---

in opposition to a motion to dismiss."  Yucyco, Ltd. v. Republic
of Slovenia, 984 F.Supp. 209, 216 (S.D.N.Y. 1997) (internal
quotation marks and citations omitted) (citing sources).  Hence,
because EBG has not submitted an amended petition nor offered
sufficient facts to support its claim of equitable estoppel, this
argument is rejected.  See id.

have arisen until June 2007, at the earliest, the interest would not have predated the government's interest in the settlement funds. Therefore, even if EBG established a valid interest in the settlement funds, its interest would not have been superior to that of the government. Accordingly, EBG's § 853(n)(6)(A) claim fails.

### 2.   21 U.S.C. § 853(n)(6)(B)

#### a.   Applicable Law

Under 21 U.S.C. § 853(n)(6)(B), a third-party petitioner may prevail if he establishes that: (1) he acquired the interest in question as a bona fide purchaser for value as defined by state law; (2) he possesses a legal right, title, or interest in the forfeited property; and (3) he was reasonably without cause to believe that the property was subject to forfeiture at the time the interest was acquired. 21 U.S.C. § 853(n)(6)(B); see Ribadeneira, 105 F.3d at 835. A petitioner generally has reason to believe that property is subject to forfeiture after an arrest or indictment of its owner has occurred. Timley, 507 F.3d at 1131.

#### b.   Application

Here, for the reasons stated above, EBG's § 853(n)(6)(B) claim also fails because it did not perfect its lien

-15-

and, as "a general creditor" without a legal interest in the
settlement funds, it "may [not] achieve standing by virtue of
being a bona fide purchaser for value" under § 853(n)(6)(B)."
Ribadeneira, 105 F.3d at 836.

### CONCLUSION

EBG cannot prevail under 21 U.S.C. § 853(n) because it
cannot assert a legal interest in the forfeited property.
Accordingly, EBG's petition is denied and the government's motion
to dismiss is granted.  The Clerk of the Court shall enter
judgment accordingly.

SO ORDERED.

Dated:    New York, New York
          April 3, 2012

DENNY CHIN
United States Circuit Judge
Sitting by Designation

-16-