# Exhibit I

```
                                                           Page 1
 1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF NEW YORK
 2
 3
     In re:                          )
 4                                   )
     SECURITIES INVESTOR             )
 5   PROTECTION CORPORATION,         )
                                     )
 6       Plaintiff-Applicant,        )
                                     )
 7   vs.                             )   08-01789 (SMB)
                                     )
 8   BERNARD L. MADOFF               )
     INVESTMENT SECURITIES, LLC,     )
 9                                   )
         Defendant.                  )
10                                   )
                                     )
11   In re:                          )
                                     )
12   BERNARD L. MADOFF,              )
                                     )
13       Debtor.                     )
                                     )
14
15
16           Videotaped Deposition of BERNARD L.
17   MADOFF, VOLUME I, taken on behalf of the Customers,
18   before K. Denise Neal, Registered Professional
19   Reporter and Notary Public, at the Federal
20   Correctional Institution, 3000 Old Highway 75,
21   Butner, North Carolina, on the 26th day of April,
22   2017, commencing at 9:07 a.m.
23
24                      * * * * *
25
```

```
                                                         Page 2
 1    APPEARANCES OF COUNSEL:
 2        On Behalf of the Customers:
 3             HELEN DAVIS CHAITMAN, Esq.
 4             Chaitman, LLP
 5             465 Park Avenue
 6             New York, New York  10022
 7             (908) 303-4568
 8             hchaitman@chaitmanllp.com
 9
10        On Behalf of the Trustee:
11             DAVID J. SHEEHAN, Esq.
12             AMANDA E. FEIN, Esq.
13             Baker Hostetler
14             45 Rockefeller Plaza
15             New York, New York  10111-0100
16             (212) 589-4621
17             afein@bakerlaw.com
18
19        On Behalf of the Deponent:
20             PETER A. GOLDMAN, Esq.
21             12 Fairlawn Parkway
22             Rye Brook, New York  10573
23             (914) 935-6857
24             pagoldman@gmail.com
25
```

Page 16

```
 1   an unlimited right to sell naked shorts?
 2        A.   Correct.
 3        Q.   So was it illegal for you to send a
 4   statement say beginning in '94 or whenever you
 5   stopped buying the securities shown on the split
 6   strike, was it illegal for you to send a statement
 7   to a split strike customer that indicated that the
 8   customer owned certain Fortune 100 company stocks
 9   when you hadn't purchased them?
10        A.   No.  It was not illegal.
11        Q.   Okay.  So if it was not illegal for you to
12   sell unlimited naked shorts, what was illegal about
13   the split strike activity?
14        A.   Well, what was illegal and what we did was
15   not reflect our short positions to the clients on
16   our audited financials.
17        Q.   Because you had a debt to each client to
18   whom you sold naked shorts --
19        A.   Correct.
20        Q.   -- in the amount -- the present value of
21   those securities; is that correct?
22        A.   Correct.
23        Q.   And that was a fraud on anyone to whom you
24   gave your financial statements; is that right?
25        A.   Well, depends upon how you define fraud.
```

```
                                                        Page 17
 1    It was a bookkeeping violation.  I don't think
 2    anybody initially would consider it a fraud.  You
 3    know, that's -- well, I just don't know.  I would
 4    say that it clearly was an SEC violation.
 5         Q.   And is it fair to say that the SEC reviewed
 6    the financial information that you submitted in your
 7    focus reports on a monthly basis?
 8         A.   Regularly, yes.
 9         Q.   And if you showed a massive debt to your
10    customers, your investment advisory customers, what
11    would they have done?
12         A.   It would have been a violation.  You
13    probably would have been suspended.
14         Q.   You would have been suspended as a broker?
15         A.   Correct.
16         Q.   Okay.  So in your view was the crime simply
17    that you didn't properly disclose the debt to your
18    customers on your financial statements?
19         A.   Correct.
20         Q.   Now, you've testified this morning that you
21    think either at the end of '93 or early '94 you
22    stopped buying securities for your customers, and I
23    just want to get a better understanding of why that
24    occurred at that time.  You had -- I think you said
25    you made a commitment to your clients to put them in
```

```
                                                   Page 107
 1    review of the earliest records available to him, the
 2    Trustee has found no evidence indicating that the
 3    BLMIS investment advisory business has been operated
 4    as anything but a Ponzi scheme.
 5           A.   Right.
 6           Q.   Now, did anyone on behalf of the Trustee
 7    ever talk to you about the trades that you did in
 8    the 1980s?
 9           A.   No.
10           Q.   Did the Trustee ever disclose to you that
11    he, in fact, had some trading records from the
12    1980s?
13           A.   No.
14           Q.   Now, when SIPC is using here the phrase
15    Ponzi scheme, if you accept for a moment that a
16    Ponzi scheme is a nonexistent business in which
17    people invest where the sole source of paying
18    returns on their investments is investments from new
19    investors --
20           A.   Uh-huh.
21           Q.   -- on that definition was the split strike
22    ever a Ponzi scheme?  In other words, did you ever
23    need new cash from new customers in order to redeem
24    other customers?
25           A.   No.
```

```
                                                      Page 122
 1    therefore, he said since the customer showed that,
 2    you know, balances in the account from transactions,
 3    he figured, okay, that was a liability that Madoff
 4    had.  He totally eliminated the fact that I was
 5    doing business, you know, back in 1983 and so on.
 6    So, therefore, I had the assets to cover that.
 7            So he said, well, he knew what the
 8    liabilities were because it was a customer
 9    statement.  He had no way of knowing what the assets
10    that I had were because he didn't have any records
11    going back then.  I mean, who would possibly make a
12    statement like that?  I mean, the biggest mistake I
13    made was not going to trial.
14            Had I gone to trial rather than just
15    saying okay, I'm going to eliminate the government
16    spending millions of dollars and years in a trial
17    with me, I'm just going to admit that I was guilty
18    because I was from 1992 on, which was bad enough.
19    You know, they for some reason, the Trustee wanted
20    to determine that I was guilty from 1963.
21            All right.  Had I gone to trial, I would
22    have called in any number of expert witnesses like
23    this Feingold or anything else and the judge would
24    have totally laughed the Trustee out of court.  Why
25    he even bothered writing -- 90 percent of his report
```