Brandon Sample
Brandon Sample PLC
P.O. BOX 250
Rutland, VT 05702
Tel: 802-444-4357
E-mail: brandon@brandonsample.com
https://compassionaterelease.com
Vt Bar # 5573

*Attorney for Bernard L. Madoff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                 :
UNITED STATES OF AMERICA,
                                                                 :      REPLY IN SUPPORT
               Plaintiff,                                               OF MOTION FOR
                                                                 :      COMPASSIONATE RELEASE

        -  v  -                                                  :

                                                                 :

BERNARD L. MADOFF,                                               :      No.: 1:09-cr-00213-DC-1

               Defendant.                                        :

                                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## I. INTRODUCTION

Defendant Bernard L. Madoff, by his attorney, respectfully submits this reply memorandum of law in further support of his Motion for Compassionate Release (Motion for Compassionate Release, ECF No. 212.) and in opposition to the Government's memorandum in opposition to Madoff's motion for a reduction in

sentence (Memorandum of Law of the U.S. in Opposition to Defendant's Motion For
A Reduction in Sentence, ECF No. 223.)

As explained in Madoff's moving papers and below, the BOP has determined
that Madoff has end-stage renal disease and a life expectancy of fewer than 18
months. Therefore, he presents an extraordinary and compelling reason for
compassionate release. Because Madoff poses no danger to the community under 18
U.S.C. § 3142(g), and because the § 3553(a) factors, on balance, support a reduction
in sentence, Madoff respectfully requests that the Court grant his motion for
compassionate release.

## II. ARGUMENT

### A.    Madoff is Terminally Ill, Eligible for Compassionate Release, and Poses No Danger to Society.

The Government does not dispute that Madoff "suffers from a 'terminal illness,'
an 'extraordinary and compelling reason' under Guidelines Section 1B1.13." (Resp.
Br., at 17.) However, despite that acknowledgment, the Government argues that
because Madoff may live longer than 18 months, and he has experienced a recent
increase in functional capacity, the Court should take this into consideration. (Resp.
Br., at 17–19.) That argument not only conflicts with the Government's concession,
but it ignores the multiple assessments provided by Dr. Jefferey Allen, the Bureau of
Prison Medical Director, and the requirements for compassionate release under the
First Step Act.

Since February 2020, Dr. Allen has communicated the following concerning
Madoff's medical status:

- <u>February 6, 2020</u>: "dialysis doesn't change the prognosis of end stage renal disease in people 80 years and older, which does meet BOP's terminal/end-of-life trajectory criteria. . . . In short, **he still meets BOP terminal criteria due to end stage renal disease and his functional limitations/debilitation have worsened since HSD's assessment in October 2019**." (Government Letter to Defense Counsel dated February 10, 2020, ECF No. 223-7, at 2 (emphasis added).)

- <u>February 11, 2020</u>: "Cardiovascular disease and frailty both have a negative impact on survival in dialysis patients, both of which Inmate Madoff has. Application of this data to his situation makes a life expectancy of 18 months/1.5 years to be a reasonable prognosis, understanding that this would be a median value . . . . Whether [dialysis treatments] has any bearing on his longevity is hard to predict. The data would seem to suggest not." (Government Letter to Defense Counsel dated February 12, 2020, ECF No. 223-6, at 2.)

- <u>February 11, 2020</u>: "the BOP uses 18 months as a benchmark for 'terminal.' The 'end of life trajectory' definition used in the First Step Act may be longer than that. . . . BOP applies that phrase to a person who is very likely to be killed by a disease in a definable period of time. For example, **if a disease results in a 60% to 80% 1–2 year survival rate, but many people live 4, 5, or 10 years, BOP would not classify them as being on an 'end of life' trajectory**." (ECF No. 223-6, at 1.)

- <u>March 2, 2020</u>: "his condition has **improved somewhat**" due to the dialysis. "It cannot be stated with certainty, but it is my clinical opinion, which is consistent with the available medical literature, that **his decision to delay dialysis has not had an adverse impact on his overall prognosis, especially in terms of his life-expectancy**." (Government Letter to Defense Counsel dated March 2, 2020, attached as Exhibit A.)

Based on the BOP's assessments, it is indisputable that Madoff is terminal and on an "end of life" trajectory—phrases that hold particular meaning within the BOP. If the BOP believed that Madoff would far surpass his survival rate (e.g., live "4, 5, or 10 years") as opposed to the 18-month life expectancy he was given, they would not have concluded he met the terminally ill criteria for a reduction in sentence. Moreover, the fact that "his condition has improved somewhat" should have no bearing on this decision, and Madoff's "decision to delay dialysis has not had an

adverse impact on his overall prognosis, especially in terms of his life-expectancy."
(Ex. A.)

No one can know for certain how long Madoff will live; however, while he could
live longer than 18 months, he could also die before that time. Indeed, past statistics
show that numerous inmates have died while seeking compassionate release. *See*
U.S. Office of Inspector General, *The Federal Bureau of Prisons' Compassionate
Release Program: April 2013*, available at
https://oig.justice.gov/reports/2013/e1306.pdf (finding that 28 (13 percent) of the 206
medical applicants died while waiting for a response from the Director); Christie
Thompson, *Frail, Old and Dying, But Their Only Way Out of Prison Is A Coffin*, N.Y.
Times, Mar. 7, 2018, https://www.nytimes.com/2018/03/07/us/prisons-compassionate-
release-.html (reporting that from 2013 to 2017, 266 inmates died in custody while
waiting on compassionate release).

Madoff has presented an extraordinary and compelling reason for
compassionate release: Madoff was deemed terminally ill and has a life expectancy of
less than 18 months on September 30, 2019—almost six months ago. (Madoff Br., at
Ex. C.)

Finally, the Government concedes in its response that Madoff has met the
exhaustion requirement. (ECF. No. 223, at 16–17.) The Government also did not
dispute that a reduction would be inconsistent with applicable policy statements and
that Madoff "is not a danger to the safety of any other person or to the community, as

provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). (Madoff Br., at 16–21.) Reducing Madoff's sentence would be consistent with the § 1B1.13 Policy Statement.

### B. Congress Passed the First Step Act to Increase Use of Compassionate Release.

Many members of the public—as well as public officials—cannot accept the idea of early release for convicted felons. However, a criminal justice system that respects human rights not only ensures accountability for those who commit crimes, it also makes certain that sanctions are proportionate to the crime and further the goals of incarceration. A just and proportionate prison sentence may become disproportionately severe in light of changed circumstances. Keeping a prisoner incarcerated past the point of serving a legitimate purpose begs the question of whether our motives are driven by retribution, deterrence, or something else. Retribution, while an important goal of sentencing, should not be the sole purpose of incarceration.

The Government, quite surprisingly, seeks to minimize the role of the First Step Act in expanding compassionate release. However, courts have recognized that Congress, via the First Step Act, wanted to increase the use of compassionate release. *See, e.g.*, *United States v. Bellamy*, 2019 U.S. Dist. LEXIS 124219, at *3 (D. Minn. July 25, 2019); *United States v. Sotelo*, 2019 U.S. Dist. LEXIS 135051, at *32 (E.D. Pa. Aug. 7, 2019); *United States v. Willis*, 2019 U.S. Dist. LEXIS 95783, at *3 (D.N.M. June 7, 2019); *United States v. Beck*, 2019 U.S. Dist. LEXIS 108542, at *15-16 (M.D.N.C. June 28, 2019); *United States v. Johns*, 2019 U.S. Dist. LEXIS 107850, at *2–3 (D. Ariz. June 27, 2019); *United States v. Cantu*, 2019 U.S. Dist. LEXIS 100923,

at *10 (S.D. Tex. June 17, 2019); *United States v. Brown*, 2019 U.S. Dist. LEXIS 175424, at *8 (S.D. Iowa Oct. 8, 2019).

In *Brown*, the court concluded that Congress intended to increase the frequency of compassionate release since changes enacted by the First Step Act were passed after the BOP started modestly granting more compassionate releases. *Brown*, 2019 U.S. Dist. LEXIS 175424, at *8. "Since Congress still amended the program following the increase, one can infer Congress through eighty-three [grants of compassionate release over 13 months] was still insufficient." *Id*. The elements for compassionate release may be the same under 18 U.S.C. § 3582(c)(1)(A), but they are now subject to greater review by the court. That review, in turn, must be conducted through Congress' lens of increased use of compassionate release.

### C.    Madoff Has, And Continues, To Be Remorseful.

Given the nature of the procedure for compassionate release, Madoff is unable to appear at a hearing to respond to the accusations made by the Government concerning his remorse and acceptance of responsibility. Filed contemporaneously with this reply, Madoff seeks an evidentiary hearing, which would allow the Court to make its own determination on this narrow issue.

The Government spent approximately six pages in its response arguing that Madoff has not accepted full responsibility for his crimes and that he is not remorseful. (Resp. Br., at 19–25.) Because the Government has placed Madoff's acceptance of responsibility at issue, Madoff should be given an opportunity to respond personally to the Court and the purported evidence that he lacks any sense

of remorse as touted by the Government. A telephonic appearance by Madoff would allow Madoff the opportunity to allocute, thereby permitting the Court and Madoff's victims to hear from Madoff himself.

Excerpted statements from depositions and interviews do not properly capture Madoff's acceptance of responsibility for his crimes. Madoff has and continues to accept responsibility for his actions, and holds sincere regret and remorse for his crimes—and the impact they have had on his victims.

At his sentencing, Madoff admitted that he "betray[ed] thousands of investors," "deceiv[ed] 200 employees," lied to his family, and "deceiv[ed] an industry." (Sentencing Transcript, June 29, 2009, ECF No. 103, 36:16–25.) He took responsibility and demonstrated that he understood the devastation caused by his actions: "I am responsible for a great deal of suffering and pain. I understand that. I live in a tormented state now knowing of all the pain and suffering that I have created." (ECF No. 103, 37:15–17.)

Madoff recognized and admitted that while he was sorry, nothing he could say would undo the damage he'd caused: "Apologizing and saying I am sorry, that's not enough. Nothing I can say will correct the things that I have done. . . . There is nothing I can do that will make anyone feel better for the pain and suffering I caused them, but I will live with this pain, with this torment for the rest of my life. I apologize to my victims. I will turn and face you. I am sorry. I know that doesn't help you." (ECF No. 103, 38:6–16.)

Madoff lives with the guilt and shame of what he did every day, and he hopes the Court will give him the opportunity to address this through an evidentiary hearing.

### D.  Section 3553(a) Factors Weigh in Favor of Compassionate Release.

The Court must impose a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). While a 150-year sentence may have seemed sufficient but not greater than necessary over a decade ago, with hindsight and in light of Madoff's health, a review of the § 3553(a) factors weigh in favor of a reduction in sentence. (ECF No. 212, at 21–26.) In its response, to the extent the Government does not contest all of the § 3553(a) factors Madoff did, Madoff argues the Government has conceded that those factors weigh in favor of a reduction in sentence.

### (1)  Madoff's History and Characteristics Have Changed.

Madoff's history and characteristics have changed—he is an 81-year old man with a terminal illness and less than 18 months to live. He has spent close to eleven years in prison, and his overall condition continues to worsen despite receiving dialysis, which Dr. Allen repeatedly notes will not change his prognosis.

### (2)  Reducing Madoff's Sentence Would Not Diminish the Seriousness of the Offense or Undermine His Original Sentence.

Not all victims of Madoff oppose his motion for compassionate release. While they may represent the minority view, their voices and opinions also deserve to be heard and taken into consideration.

- "He has already paid a substantial price for his malfeasance and no further justice would be served in keeping him imprisoned."

- "Even though we lost a lot of our savings, we favor Mr. Madoff being released to die on his own turf. We believe he has had enough opportunity to come to regret his actions. Even if he hasn't, we think there is no need for the taxpayers to provide his end of life are in prison. Certainly he can get more compassion[] elsewhere."

- One victim, who lost $250,000 in one day wrote, "his life expectancy is only 18 months and having to live with kidney failure in my view is as good as a death sentence. . . . [T]he merciful thing to do in this case is allow Mr. Madoff to live out the remaining time he has, out of prison. . . . I have harbored extremely ill will towards Mr. Madoff since the day I discovered my family and I were one of his victims. Nevertheless, compassion is needed at this stage."

- "Although Bernard Madoff made some very bad decisions, which financially devastated many people . . . I do not feel a life sentence is what he deserves. I can imagine that 10 years in prison has given him ample time to think about his poor decisions and taught him the value of being honest and having integrity. Due to his poor health, I am in support of him being released early. We are all human beings and we can make mistakes. I'm sure he has had ample opportunity to think about these mistakes for the last 10 years."

- "I strongly support his release. I feel that he has more than paid his due not only by his long enough incarceration but by the pain that he must feel for the tragedies that befell his family. I hope many will join me in appealing to the Court to honor his request."

- "10 years in jail is a sufficient penalty for him and a sufficient deterrent for other people who could plan such crime."

- "Of course it was bad what he has done and I think he knows it too. Being for about 10 years in prison now and being sick, I think that he has suffered enough."

- "I forgive Mr. Madoff, and I'd like him to be released."

- "[W]e are practicing Christians who believe in Mercy, first, and Forgiveness, always! We are sure he has had to bear unbelievable hardship in prison, and that he no longer represents any kind of threat to society; therefore, we are in favor of his release.

The comments from these victims highlight several critical points for consideration. First, Madoff has been incarcerated for over ten years, beginning when he was 71 years old. The punitive effects of serving over a decade in federal prison should not be overlooked, particularly because of his age, terminal illness, and short life expectancy. Moreover, should Madoff be granted compassionate release, he will continue to live with the daily consequences of his conviction.

Second, aside from incarceration, Madoff has been punished in other ways. His two sons are now deceased, and his wife has to live with the disgrace of Madoff's crimes. He is tormented by the shame and suffering he has brought on his family. Madoff admits that as a result of his actions, he has lost his freedom, his family, and his dignity.

Reducing Madoff's sentence would not diminish the severity of his offense since he would still be serving an effective life sentence. In *Ebbers*, the Court originally sentenced the defendant to a 25-year term, which was meant to serve as an effective life sentence given that Ebbers was 65 at that time. *Ebbers*, 2020 U.S. Dist. LEXIS 3746, at *4 ("this sentence is likely to be a life sentence . . . anything less would not sufficiently reflect the seriousness of the crime"). However, in light of Ebbers' age and illness, the court granted him compassionate release and concluded that a reduction would not "discount the seriousness of his offense." *Id*. at *25. The court noted that "[t]hirteen years of incarceration—up to the point of approaching death—is not a slap on the wrist . . . Ebbers has essentially served the life sentence that the sentencing court predicted it had imposed." *Id*. at *25.

Congress passed the First Step Act long after Madoff was sentenced. If Congress wanted to exclude prisoners with life sentences or effective life sentences from compassionate release—Congress could have done so. It was foreseeable that persons serving life sentences would seek and be granted compassionate release. Notably, people with life sentences have been granted compassionate release under the First Step Act. *See United States v. Johns*, 2019 U.S. Dist. LEXIS 126774 (E.D.N.Y July 2019) (granting release after serving 26 years of a life sentence)

Finally, the Court should not overlook the substantial amount of funds recovered in this case, which far exceeds any prior restitution efforts related to Ponzi schemes. https://www.madofftrustee.com/recoveries-25.html.

### (3)    Compassionate Release Would Not Minimize Deterrence.

The Government argues that reducing Madoff's sentence would diminish deterrence, but as the Ebbers' court noted: "Thirteen years of incarceration—up to the point of approaching death—is not a slap on the wrist; it seems likely that no one who might be considering committing accounting fraud would view his sentence as lenient. *Ebbers*, 2020 U.S. Dist. LEXIS 3746, at *25. Similarly, it defies reason to think a person would consider the actions and sentence of Madoff, and the fact that he is dying in prison, and not be deterred.

Through Madoff's sentence, this Court wanted to send the message that engaging in this type of conduct would be punished "to the fullest extent of the law." (ECF No. 103, at 47: 18–19.) Yet, that message also should be balanced with compassion based on Madoff's present circumstances. *See Ebbers*, 2020 U.S. Dist.

LEXIS 3746, at *26 ("The compassionate thing to do in this case is to release Ebbers early.").

### (4)    Compassionate Release Would Not Cause Unwarranted Sentencing Disparities.

Granting Madoff compassionate release would not result in unwarranted sentencing disparities because Madoff's original sentence would only be modified as a result of unforeseen, changed circumstances. Even if released, he would still be under significant supervision and spend his remaining months battling a terminal illness—this is, effectively, still a life sentence.

Moreover, the Court has the authority to "impose a term of probation or supervised release with or without conditions that do[] not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A) (alterations added). Thus, to the extent the Court deems it just and proper, the Court could order that Madoff be released, but placed on home incarceration as a condition of supervised release until November 14, 2139—Madoff's current release date. Madoff's original three-year term of supervised release can be extended until November 14, 2139 because doing so would "not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). It is hard to imagine how home incarceration until November 14, 2139, should the Court adopt same, not remain "symbolic" while also accomplishing the other original purposes of the Court's sentence. This is particularly true when one considers what home incarceration actually is:

c. Home Incarceration: Home incarceration requires 24-hours-a-day lock-down except for medical necessities and court appearances or other activities specifically approved by the court.

*See* https://www.uscourts.gov/services-forms/location-monitoring-probation-supervised-release-conditions. Furthermore, Madoff would be subject to numerous onerous conditions of supervised release:

### STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

### SPECIAL CONDITIONS OF SUPERVISION

The defendant shall provide the probation officer with access to any requested financial information.

The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless he is in compliance with any payment schedule that is set for restitution.

The defendant shall report to the nearest Probation office within 72 hours after release from custody.

The defendant shall be supervised by the district of residence.

*See*, ECF 100 at 4-5.

Ultimately, the Court can devise any post-release conditions it sees fit to address any lingering concerns it may have. For instance, in *United States v. Gray*,

the court ordered the release of a 64-year old inmate after serving 20 years of his life sentence, and it noted that post-release supervision "will continue to serve as a sanction and general deterrent, appropriately recognizing the seriousness of Mr. Gray's conduct. But further incarceration is not needed to deter Mr. Gray from further offenses." *United States v. Gray*, 2019 U.S. Dist. LEXIS 160593, at *12–13 (S.D. Ind. Sept. 20, 2019).

### III. CONCLUSION

Madoff's Motion for Compassionate Release questioned the limits of compassionate release, specifically with regard to the Lockerbie bomber. Scotland released a terrorist who killed approximately 270 people because the prisoner was dying from cancer; he served eight years in prison and continued to maintain his complete innocence. Despite the horrific nature of his crimes, he was granted compassion.

"The power of just mercy is that it belongs to the undeserving." Bryan Stevenson, *Just Mercy: A Story of Justice and Redemption*. Additionally, "an absence of compassion can corrupt the decency of a community, a state, a nation. Fear and anger can make us vindictive and abusive, unjust and unfair." *Id.*

After more than a decade in prison, Madoff's 150-year sentence—in light of his terminal kidney failure and short life expectancy—is no longer in furtherance of statutory sentencing goal's nor is it consistent with the value of compassion embodied by our society and the First Step Act.

Accordingly, based on the foregoing and Madoff's original moving papers, the

Court should grant Madoff compassionate release.

Respectfully submitted,

By:     /s/Brandon Sample
        Brandon Sample
        Brandon Sample PLC
        P.O. BOX 250
        Rutland, VT 05702
        Tel: 802-444-4357
        E-mail: brandon@brandonsample.com
        https://compassionaterelease.com
        Vt Bar # 5573

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served this 11th day

of March, 2020, via CM/ECF on all counsel of record.

/s/Brandon Sample
Brandon Sample